# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| BRIAN E. MALLORY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 15-7049 |
| | ) | |
| ROBERT A. MCDONALD, | ) | |
| Secretary of Veterans Affairs, | ) | |
| | ) | |
| Appellee. | ) | |

## APPELLANT'S UNOPPOSED MOTION FOR A STAY OF PROCEEDINGS IN THIS APPEAL PENDING THE ISSUANCE OF A DECISION IN MCKINNEY V. MCDONALD

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 27(a)(7), and 47.4, counsel for Appellant,

Brian E. Mallory, certifies the following:

1.    The full name of every party represented by me is:

Brian E. Mallory

2.    The names of the real party in interest (if the party named in the

caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own

10 percent or more of the stock of the parties represented by me are:

N/A

4.     The names of all law firms and partners or associates that appeared for the parties now represented by me in the trial court or are expected to appear in this court are:

<u>National Veterans Legal Services Program</u>
Patrick A. Berkshire
Barton F. Stichman

Respectfully Submitted,

Dated: <u>March 16, 2015</u>          <u>/s/ Patrick A. Berkshire</u>
                                    Patrick A. Berkshire
                                    Barton F. Stichman
                                    National Veterans Legal Services Program
                                    1600 K Street, N.W., Suite 500
                                    Washington, DC 20006-2833
                                    (202) 621-5710
                                    patrick_berkshire@nvlsp.org

## UNOPPOSED MOTION FOR A STAY OF PROCEEDINGS

Pursuant to U.S. Fed. Cir. R. 8, Appellant Brian E. Mallory respectfully requests that the Court stay proceedings in this instant appeal pending the issuance of a decision by the Court in *McKinney v. McDonald*, No. 14-7093.

A stay should be granted in this case pending the outcome of *McKinney* because the Court's determination in that case could materially affect the disposition of this current appeal. In *McKinney* the petitioners assert that the Secretary's actions concerning the assigned effective date for 38 C.F.R. § 3.307(a)(6)(iv) and the publication of a 2003 Manual Rule in the M21-1MR (VA's adjudication manual) – rules concerning herbicide exposure for certain veterans who served in the Korean Demilitarized Zone – were arbitrary and capricious and contrary to law. *See* Exhibit A, Petitioners' Opening Brief at 24-38. Specifically, the petitioners have argued that the effective date of § 3.307(a)(6)(iv) is arbitrary and capricious because that regulation essentially served as a cure for the Secretary's 2003 Manual Rule that had (1) created an arbitrarily narrow period of presumed herbicide exposure for certain Korean DMZ veterans, and (2) been issued without proper notice and comment in violation of Administrative Procedures Act. *Id*.

In the case currently on appeal, Appellant was denied an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act because the Court of Appeals for Veterans Claims (CAVC) determined that the Secretary's administrative and litigation positions were substantially justified. *See* Exhibit B, CAVC Med. Dec. at 5-9. In that decision, the CAVC gave two primary reasons that the Secretary was substantially

3

justified. First, the CAVC found that the Board's reliance on the 2003[1] Manual Rule was obviously reasonable because it was bound by the M21-1MR provision in question. Exhibit B at 5. Second, the CAVC found that if the M21-1MR provision was found invalid that the Board would have been left with no legal authority to grant the benefits at issue in the appeal. *Id*. at 6. Accordingly, the CAVC's denial of attorneys' fees in this case rests largely on the validity of the 2003 Manual Rule.

As stated earlier, the validity of the 2003 Manual Rue is a major subject of the litigation in *McKinney v. McDonald*. As a result, the Federal Circuit's holding in that case could materially impact litigation in this current appeal by either buttressing or undermining the rationale advanced by the CAVC for denying attorneys' fees under EAJA. As a result, granting this stay could preserve judicial resources and allow for a more efficient disposition of this appeal.

As required by U.S. Fed. Cir. R. 27(a)(5), undersigned counsel certifies that he has contacted counsel for the Secretary, David M. Kerr, Esq, and the appellee is <u>unopposed</u> to this motion.

WHEREFORE, Appellant respectfully requests that the Court grant this unopposed motion for a stay of proceedings pending a decision in *McKinney v. McDonald*.

---

[1] Undersigned counsel notes that in *Mallory* the M21-1MR provision at issue is referred to as the "2004 Manual Rule," instead of as the "2003 Manual Rule." This is because undersigned counsel learned from the VA's July 10, 2014 letter in *McKinney* that the VA began conceding herbicide exposure for Korean DMZ veterans in its manual rules in 2003 as opposed to 2004; however, the manual provision at issue in this appeal is the same provision as is at issue in *McKinney*. Exhibit A at 8, fn 2.

Respectfully submitted,

Dated:  March 16, 2015                    /s/ Patrick A. Berkshire
                                          Patrick A. Berkshire
                                          Barton F. Stichman
                                          National Veterans Legal Services Program
                                          1600 K Street, N.W., Suite 500
                                          Washington, DC 20006-2833
                                          (202) 621-5710
                                          patrick_berkshire@nvlsp.org

Exhibit A

2014-7093

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
————————————

MICHAEL L. MCKINNEY,
THE NATIONAL VETERANS LEGAL SERVICES PROGRAM,
THE MILITARY ORDER OF THE PURPLE HEART,
VIETNAM VETERANS OF AMERICA, AND
THE AMERICAN LEGION

Petitioners,

v.

ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,

Respondent.

PETITIONERS' OPENING BRIEF

STEPHEN B. KINNAIRD
DANIELLE C. DOREMUS
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
(202) 551-1700
stephenkinnaird@paulhastings.com
danielledoremus@paulhastings.com

October 24, 2014

BARTON F. STICHMAN
PATRICK BERKSHIRE
NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1600 K Street, NW, Suite 500
Washington, DC 20006
(202) 621-5677
bart_stichman@nvlsp.org
patrick@nvlsp.org

*Attorneys for Petitioners*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 26.1, 28(a)(1), and 47.4, counsel for

Petitioners Michael L. McKinney, the National Veterans Legal Services Program,

the Military Order of the Purple Heart, Vietnam Veterans of America, and The

American Legion certifies the following:

1.    The full name of every party represented by me is:

> Michael L. McKinney;
> National Veterans Legal Services Program;
> Military Order of the Purple Heart;
> Vietnam Veterans of America;
> The American Legion

2.    The names of the real party in interest (if the party named in the

caption is not the real party in interest) represented by me is:

> N/A

3.    All parent corporations and any publicly held companies that own

10 percent or more of the stock of the parties represented by me are:

> N/A

4.    The names of all law firms and partners or associates that appeared for

the parties now represented by me in the trial court or are expected to appear in this

court are:

> <u>National Veterans Legal Services Program</u>
> Barton F. Stichman
> Patrick Berkshire

Paul Hastings LLP
Stephen B. Kinnaird
Danielle C. Doremus

October 24, 2014

Respectfully submitted,

___/s/ Stephen B. Kinnaird_____
Stephen B. Kinnaird, *Attorney of Record*
Danielle C. Doremus
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone:  (202) 551-1700
stephenkinnaird@paulhastings.com
danielledoremus@paulhastings.com

Barton F. Stichman
Patrick Berkshire
NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1600 K Street, NW, Suite 500
Washington, DC 20006
Telephone:  (202) 621-5677
bart_stichman@nvlsp.org
patrick@nvlsp.org

*Counsel for Petitioners*
*Michael L. McKinney, the National*
*Veterans Legal Services Program, the*
*Military Order of the Purple Heart,*
*Vietnam Veterans of America, and The*
*American Legion*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ............................................................................... 1

STATEMENT OF RELATED CASES .................................................. 1

JURISDICTION .................................................................................... 2

STATEMENT OF ISSUES .................................................................. 3

STATEMENT OF THE CASE ............................................................. 4

STATEMENT OF FACTS .................................................................... 5

    A.    Legislative Background of Agent Orange-Related Benefits ......................................................................... 5

    B.    Passage of the Veterans Benefits Act and the Promulgation of DVA Manual Rules Governing Claims Related to Korean DMZ Herbicide Exposure ........................... 8

    C.    Impacts of the 2011 Regulation's Effective Date ................... 10

    D.    Mallory Litigation and Settlement ........................................... 12

    E.    Petitioners' Request to Amend the Effective Date ................. 13

    F.    The DVA's July 10, 2014 Denial of Petitioner's Request for Rulemaking ..................................................................... 14

STANDARD OF REVIEW ................................................................. 15

SUMMARY OF ARGUMENT ............................................................ 17

ARGUMENT ....................................................................................... 19

    I.    INTRODUCTION .......................................................................... 19

    II.    SECTION 5110 DOES NOT BAR AN EARLIER EFFECTIVE DATE FOR THE 2011 REGULATION ........................... 20

    III.    THE 2011 REGULATION'S EFFECTIVE DATE IS ARBITRARY AND CAPRICIOUS AND CONTRARY TO LAW .................................................................................... 23

# TABLE OF CONTENTS

(continued)

A.   The 2011 Regulation's Effective Date Is Contrary to Law
Because It Violates 38 U.S.C. § 1110......................................24

B.   The 2011 Regulation's Effective Date Is Arbitrary and
Capricious Because There Is No Rational Basis for
Applying Two Conflicting Evidentiary Standards to a
Single Pending Claim ............................................................29

C.   The DVA's Disparate Treatment Violates Veterans'
Constitutional Rights .............................................................37

D.   In the Alternative, the DVA Should Amend the 2003
Manual Rule to Eliminate the Arbitrary Mistreatment of
Veterans Exposed to Herbicide Residuals Between July
1969 and August 1971 ...........................................................38

CONCLUSION.......................................................................................39

CERTIFICATE OF SERVICE ..............................................................41

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS .........................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
   522 U.S. 359 (1998) ................................................................................33

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ..........................................................................14, 26

*Brown v. Gardner*,
   513 U.S. 115 (1994) ..........................................................................16, 29

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ................................................................................16

*Christensen v. Harris Cnty.*,
   529 U.S. 576 (2000) ................................................................................16

*Cushman v. Shinseki*,
   576 F.3d 1290 (Fed. Cir. 2009) .....................................................24, 25, 37

*Flemming v. Nestor*,
   363 U.S. 603 (1960) ................................................................................37

*Fugere v. Derwinski*,
   1 Vet. App. 103 (1990), *aff'd*, 972 F.2d 331 (Fed. Cir. 1992) ....................32, 33

*Guerra v. Shinseki*,
   642 F.3d 1046 (Fed. Cir. 2011) .....................................................32, 33

*Hayes v. Brown*,
   4 Vet. App. 353 (1993) ............................................................................33

*Hodge v. West*,
   155 F.3d 1356 (Fed. Cir. 1998) ............................................................16

*Hunter v. Shinseki*,
   538 F. App'x 904 (Fed. Cir. 2013) ........................................................22

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*LeFevre v. Sec'y, Dep't of Veterans Affairs,*
   66 F.3d 1191 (Fed. Cir. 1995) ...............................................................27, 28, 33

*McCay v. Brown,*
   9 Vet. App. 183 (1996), *aff'd*, 106 F.3d 1577 (Fed. Cir. 1997) .............22, 28, 35

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut.*
   *Auto. Ins. Co.,*
   463 U.S. 29 (1983).................................................................................30

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,*
   314 F.3d 1373 (Fed. Cir. 2003) .........................................................15

*Nehmer v. U.S. Veterans' Admin.,*
   712 F. Supp. 1404 (N.D. Cal. 1989).................................................28, 36

*Preminger v. Secretary of Veterans Affairs,*
   517 F.3d 1299 (Fed. Cir. 2008) ........................................................2, 3

*Routen v. West,*
   142 F.3d 1434 (Fed. Cir. 1998) .........................................................22

*Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms, &*
   *Explosives,*
   437 F.3d 75 (D.C. Cir. 2006) ...........................................................30

*United States v. Mead Corp.,*
   533 U.S. 218 (2001).........................................................................16

*Vartelas v. Holder,*
   132 S. Ct. 1479 (2012).....................................................................26

*White v. United States,*
   191 U.S. 545 (1903).........................................................................26

# TABLE OF AUTHORITIES

## (continued)

**Page(s)**

**Statutes**

5 U.S.C. § 553(b)-(d) .................................................................................32

5 U.S.C. § 702 ............................................................................................2

5 U.S.C. § 706 ....................................................................................15, 23

5 U.S.C § 706(2)(A) .......................................................................15, 29, 37

28 U.S.C. § 2401(a) .................................................................................2, 3

38 U.S.C. § 501(a) ....................................................................................14

38 U.S.C. § 501(d) ...............................................................................31, 32

38 U.S.C. § 502.........................................................................2, 3, 15, 23

38 U.S.C. § 1110.....................................................................24, 25, 26

38 U.S.C. § 1137.......................................................................................22

Veterans Benefits Act, 38 U.S.C. § 1821 .......................................8, 10, 35

38 U.S.C. § 5110(a) ..................................................................................25

38 U.S.C. § 5110(g) ............................................................................*passim*

Veterans' Benefits Improvement Act of 1996, Pub. L. No. 104-275,
110 Stat. 3322, § 505(b) (1996) ..................................................................6

Agent Orange Act of 1991, Pub. L. No. 102-4, § 2(a)(1), 105 Stat. 11
(1991) .................................................................................................5, 6

Veterans Disability Compensation and Surviors Benefit Act of 1974,
Pub. L. No. 93-295, 88 Stat 180 (May 31, 1974) ........................................22

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

**Code of Federal Regulations**

38 C.F.R. § 3.306 ....................................................................................22

38 C.F.R. § 3.307(a)(6)(iv) ...............................................................*passim*

38 C.F.R. § 3.309 .......................................................................................7

38 C.F.R. § 3.309(e) ................................................................................6, 7

38 C.F.R. § 3.814(c)(2) ............................................................................38

38 C.F.R. § 3.816(c) ...........................................................................29, 36

**Legislative Materials**

130 Cong. Rec. 13,159 (May 22, 1984) ...................................................27

149 Cong. Rec. S15133 (daily ed. Nov. 19, 2003) ...................................8

S. Rep. No. 104-371 (1996) .......................................................................6

**Other Authorities**

55 Fed. Reg. 43,123 (Oct. 26, 1990) ........................................................28

57 Fed. Reg. 59,296 (Dec. 15, 1992) ..................................................22, 29

58 Fed. Reg. 29,109 (May 19, 1993) ......................................................6, 7

59 Fed. Reg. 5107 (Feb. 3, 1994) ..............................................................7

66 Fed. Reg. 23,166 (May 8, 2001) ...........................................................7

76 Fed. Reg. 4245 (Jan. 25, 2011 ) .....................................................4, 38

78 Fed. Reg. 54,763 (Sept. 6, 2013) ........................................................28

Fed. Cir. Rule 47.12(a) ...............................................................................3

# INTRODUCTION

The law entitles veterans to benefits for injuries incurred during service. Once the Department of Veterans Affairs ("DVA") makes a factual determination that a veteran's injuries are service-connected, benefits are mandatory. By making 38 C.F.R. § 3.307(a)(6)(iv) effective on February 24, 2011, the DVA violated those laws. The regulation's erroneous effective date requires the DVA to apply two irreconcilable evidentiary standards to the factual question of herbicide exposure in resolving a single claim brought by the same veteran, resulting in conflicting factual determinations and benefit awards. To recover for pending pre-2011 benefits, certain veterans must prove actual exposure to toxic herbicides during service. To recover for pending post-2011 benefits, the *same* veterans are presumed to have been exposed to toxic herbicides based on the same service. There is no rational basis for continuing to apply an outdated and arbitrary evidentiary standard to veterans' pending claims. Accordingly, Section 3.307(a)(6)(iv)'s February 24, 2011 effective date should be set aside.

# STATEMENT OF RELATED CASES

Petitioners are not aware of any pending cases related to this action, and no appeal related to this action was previously before this or any other appellate court.

-1-

## JURISDICTION

Petitioners challenge the effective date of 38 C.F.R. § 3.307(a)(6)(iv) ("2011 regulation"), a rule promulgated by the DVA that establishes presumptions of exposure to herbicides in the Korean demilitarized zone ("DMZ") during the Vietnam era.  Petitioners also challenge the DVA's denial on July 10, 2014, of their petition for rulemaking to amend the 2011 regulation.  JA26, JA32.[1]  This Court has jurisdiction to hear Petitioners' challenge pursuant to 38 U.S.C. § 502 and 5 U.S.C. § 702.  *Preminger v. Secretary of Veterans Affairs*, 517 F.3d 1299, 1305 (Fed. Cir. 2008) ("Pursuant to 38 U.S.C. § 502, we have jurisdiction to directly review the validity of both the rulemaking process and the challenged rules of the VA.") (citation and internal quotation marks omitted); 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

This petition is timely.  Petitioners bring this challenge to the 2011 regulation within the applicable six-year statute of limitations.  *See* 28 U.S.C. § 2401(a) (a challenge to "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"); *Preminger*, 517 F.3d at 1307 (holding that the six-year statute of

---

[1] Petitioner The American Legion was not a party to the January 28, 2014 request.

limitations in 28 U.S.C. § 2401(a) applies to actions brought under 38 U.S.C.

§ 502).  The Court therefore has jurisdiction to hear Petitioners' challenge to the

effective date of the regulation.

Petitioners' challenge to the DVA's denial of their request for rulemaking to

amend the effective date of the 2011 regulation is likewise timely.  *See* JA32.

Petitioners received a response on behalf of the Secretary rejecting their request on

July 10, 2014.  JA24.  In accordance with local rules, Petitioners filed their petition

for review within 60 days of the DVA's denial, *see* Fed. Cir. Rule 47.12(a), but

more importantly, their petition was filed within the applicable six-year statute of

limitations.  *See* 28 U.S.C. § 2401(a); *Preminger*, 517 F.3d at 1307.  The Court

therefore has jurisdiction to hear this petition for review in all respects.

## STATEMENT OF ISSUES

1.    Does the statute regarding the effective dates of administrative

awards, 38 U.S.C. § 5110(g), prevent the DVA from establishing an effective date

for Korean DMZ Agent Orange Regulation 38 C.F.R. § 3.307(a)(6)(iv) prior to

February 24, 2011?

2.    Assuming it does not, is the February 24, 2011 effective date of

Korean DMZ Agent Orange Regulation 38 C.F.R. § 3.307(a)(6)(iv) arbitrary and

capricious and contrary to law?

-3-

## STATEMENT OF THE CASE

The DVA promulgated the 2011 regulation on January 25, 2011, with an effective date of February 24, 2011.  76 Fed. Reg. 4245 (Jan. 25, 2011 ); JA97. The effective date of the regulation was challenged in the Court of Appeals of Veterans Claims in *Mallory v. Shinseki*, No. 11-401 (Vet. App. filed Feb. 7, 2011). The DVA settled the *Mallory* litigation by awarding the veteran the claimed service connection and benefits dating back to 2006 and 2007 (*i.e.*, prior to the regulation's effective date).  JA30.  The DVA represented in the settlement agreement that if there were "'similarly situated appeals to the [Veterans Court], those Appellants would receive similar treatment.'"  JA30.

Notwithstanding this representation, the DVA continued to apply the February 24, 2011 effective date to deny relief to veterans who would otherwise have received benefits under the 2011 regulation.  On January 28, 2014, Petitioners sent a letter to the Secretary of the DVA requesting that he exercise his discretion to change the February 2011 effective date for the Agent Orange regulation, 38 C.F.R. § 3.307(a)(6)(iv) (the 2011 regulation).  JA32.  After six months without a response, Petitioners filed a petition for review with this Court.  Shortly thereafter, Petitioners filed a request to stay all affected veterans' benefits claims pending disposition of their petition for review.

Approximately one month after Petitioners' filed their petition for review and motion to stay, on July 10, 2014 Petitioners received a letter in response to their letter to the DVA.  JA24.  In that letter, the DVA formally rejected Petitioners' request to change the effective date of the 2011 regulation.  *Id.* Accordingly, Petitioners filed an amended petition for review acknowledging the DVA's formal denial on August 13, 2014.  The next day, this Court denied Petitioners' motion to stay, expressly declining to state any view on the merits of Petitioners' claims.  Mot. to Stay 1 (Aug. 14, 2014).

## STATEMENT OF FACTS

### A.    <u>Legislative Background of Agent Orange-Related Benefits</u>

In 1991, Congress enacted the Agent Orange Act and mandated, for purposes of service-connected disability and death compensation benefits, that certain enumerated diseases manifest "in a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam era" would be presumed to have been incurred or aggravated during service (as would others that the Secretary of the DVA subsequently determined by regulation to be positively associated with herbicide exposure and warranting the presumption). Agent Orange Act of 1991, Pub. L. No. 102-4, § 2(a)(1), 105 Stat. 11 (1991) (now codified at 38 U.S.C. § 1116).  In addition to the presumption of *service connection*, Congress created a separate presumption of *exposure*; it provided that

the DVA must presume that military personnel who served "in the Republic of Vietnam during the Vietnam era" were exposed to toxic herbicides. *Id.*

Congress in 1996 amended section 1116 to extend the presumption of exposure to those who served "in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975," to account for earlier periods of herbicide use. Veterans' Benefits Improvement Act of 1996, Pub. L. No. 104-275, 110 Stat. 3322, 3342, § 505(b) (1996); S. Rep. No. 104-371, at 21 (1996). Even though actual herbicide use in the Republic of Vietnam had ceased by 1971, Congress chose May 7, 1975 as the end date of the presumption-of-exposure period to account for residual exposure to herbicide sprayed in earlier years. *See* S. Rep. No. 104-371, at 21 ("The Committee intends that benefits that are premised on presumed exposure to defoliants and herbicides shall be available to all who served in the Republic of Vietnam *when such materials were present there*, but that they not be extended to those who served in the Republic of Vietnam only before such materials were introduced.") (emphasis added).

In the wake of the Agent Orange Act of 1991, the DVA in 1993 promulgated 38 C.F.R. § 3.309(e), which entitled veterans who served in the Republic of Vietnam during the Vietnam era to a presumption of service connection for herbicide-associated diseases identified by the Secretary. 58 Fed. Reg. 29,109 (May 19, 1993).

Agent Orange was not only used in the Republic of Vietnam, however.  For example, during the Vietnam War, from April 1968 to July 1969, Agent Orange was also applied along the southern boundary of the Korean DMZ.  *See* JA97.  As a result, troops stationed in the Korean DMZ during that period and long after were exposed to harmful toxins, causing many to develop Agent-Orange related illnesses.  *See id.*

On February 3, 1994, the DVA amended the presumption of *service connection* in Rule 3.309(e) to apply to any veteran who was "exposed to an herbicide agent during active military, naval, or air service," not just those who served in the Republic of Vietnam during the Vietnam era.  59 Fed. Reg. 5107.  But because the separate statutory presumption of *exposure* only applied to those who served in the Republic of Vietnam, other veterans were required to prove actual exposure to herbicides during service to recover under Rule 3.309(e).  JA26; *see* 66 Fed. Reg. 23, 166 (May 8, 2001).  Rule 3.309 also enumerates the specific diseases that the Secretary has found over the years to be associated with herbicide exposure and subject to the presumption of service-connection.  38 C.F.R. § 3.309(e).

**B.**    **Passage of the Veterans Benefits Act and the Promulgation of DVA Manual Rules Governing Claims Related to Korean DMZ Herbicide Exposure**

In 2003, Congress passed the Veterans Benefits Act, which authorized benefits to children with spina bifida of military personnel who had served in or near the Korean DMZ from September 1, 1967 to August 31, 1971 and had been exposed to an herbicide during such service.  JA103.  Congress was aware that herbicide use in or near the Korean DMZ ended in 1969, but extended the covered period through August 1971 to account for residual exposure:

> The Committees note that although use of herbicides in Vietnam ceased in 1971, Vietnam-era veterans who served until May 7, 1975, are presumed to have been exposed to residuals.  Similarly, even though herbicide use in or near the Korean DMZ ended in 1969, the Committees *believe it is appropriate to extend the qualifying service period beyond 1969 to account for residual exposure*.

149 Cong. Rec. S15133 (daily ed. Nov. 19, 2003) (emphasis added).

The DVA did not initially promulgate notice-and-comment regulations to implement the Veterans Benefits Act; instead, in 2003 it effectively declared new substantive rules through amendment of its DVA adjudication manual.[2]  The DVA instructions establish a presumption of exposure for certain Korean DMZ veterans, both for the claims of children of such veterans seeking spina bifida benefits, JA69, and for the claims relating to herbicide-related diseases contracted by the veteran, JA74, JA75.

---

[2] Petitioners learned from the DVA's July 10, 2014 letter that the DVA began conceding herbicide exposure for Korean DMZ veterans in its manual rules in 2003, not 2004 as Petitioners had presumed in their January 28, 2014 letter.  JA26, JA33.

-8-

The DVA elected not to use the full four-year period (September 1, 1967 to August 31, 1971) selected by Congress to account for residual herbicide exposure. Instead, the 2003 manual rules divided this four-year period into different time blocks, entitling veterans who served at different points during the four-year window to different presumptions of exposure (the "2003 manual rule"). *See* JA69-81. Under these rules, the DVA was required to presume that veterans who served near the Korean DMZ during the 16 month period when herbicides were applied—April 1, 1968 to July 31, 1969—were exposed to herbicides. In sharp contrast, those who served near the Korean DMZ during other parts of the four-year period—from September 1, 1967 to March 31, 1968 and from August 1, 1969 to August 31, 1971—had to establish exposure to herbicides on a factual, case-by-case basis. JA74-81.

The 2003 manual rule was applied to veterans' claims for six years before it was noticed for public comment in July 2009. JA26, JA88. After receiving comments criticizing the proposed regulation's overly narrow period of presumed exposure, the DVA expanded the time period for presumptive exposure in the final rule. *See generally* JA97. On January 25, 2011, the DVA published 38 C.F.R. § 3.307(a)(6)(iv) (the 2011 regulation), which extended the 2003 manual rule's 16 month exposure window (April 1968 to July 1969) to 41 months (April 1968 to August 1971). In the 2011 regulation's final rule notice, the DVA specifically

-9-

recognized that it was conceding exposure in the Korean DMZ through August 1971 (after herbicide application had ceased) "because of the potential for exposure to residuals of herbicides applied in that area." JA97. The 2011 regulation therefore adopted an exposure window nearly identical to the period originally set forth in the Veterans Benefit Act in 2003. JA106.

The 2011 regulation's effective date was set for February 24, 2011. JA97. As a result, veterans who served in the Korean DMZ between July 1969 and August 1971 only became eligible for service-connection benefits based on a presumption of exposure as of that date. Because the effective date was not earlier, the DVA does not apply the 2011 regulation to the *same* veterans' pending claims insofar as they seek pre-2011 benefits; those benefits are determined under the 2003 manual rule.

### C.    Impacts of the 2011 Regulation's Effective Date

Potentially hundreds or thousands of veterans who filed claims for benefits after 2003 but before 2011 have been denied compensation for Agent-Orange related illnesses based on the 2011 regulation's February 24, 2011 effective date. Nearly 20,000 soldiers were deployed in the Korean DMZ at any one time during the 41 month period between April 1968 to August 1971. *See* Mot. to Stay, Ex. C. Any number of those veterans may have pre-2011 claims for related disabilities that remain pending.

-10-

One such veteran is Petitioner Michael McKinney. In 2010, Mr. McKinney filed a claim for several diseases to which DVA regulations accord presumptive service-connected status due to Agent Orange exposure. *See McKinney v. Shinseki,* No. 12-3639 (Vet. App. filed Dec. 17, 2012). His claim was based on exposure to Agent Orange during his service along the Korean DMZ, which began in August 1969.

The DVA regional office denied Mr. McKinney's claim because his service in the Korean DMZ started one month after the 16 month period of presumed exposure ended under the 2003 manual rule. *Id.* In 2011, while Mr. McKinney's claim was still pending, the DVA finalized the 2011 regulation, which extended the 2003 manual rule's presumed exposure period by 25 months, to and including August 31, 1971. JA97. In March 2012, a Decision Review Officer ("DRO") granted Mr. McKinney's 2010 claim for service connection pursuant to the 2011 regulation. *See generally McKinney,* No. 12-3639. However, the DRO held that Mr. McKinney was not entitled to compensation for any period prior to February 24, 2011 because the Secretary of Veterans Affairs assigned February 24, 2011 as the effective date of the 2011 regulation. *Id.* As a result, Mr. McKinney received benefits for the post-2011 portion of his claims based on the 2011 regulation's presumption of exposure, but was denied pre-2011 benefits based on a lack of evidence of service-connection.

-11-

## D.    **Mallory Litigation and Settlement**

Brian Mallory, a veteran who served in the Korean DMZ during the same 25 month gap period as Mr. McKinney (August 1, 1969 and August 31, 1971) was also denied benefits under the 2003 manual rule. *See generally Brian Mallory v. Shinseki*, 11-0401 (Vet. App.), Brief for Appellant (Oct. 19, 2011) ("Brief for Appellant"). Mr. Mallory appealed the DVA's denial to the Court of Appeals for Veterans Claims. JA85. He sought benefits dating back to December 2006, when he requested that the DVA reopen his previously denied claim for entitlement to service connection for diabetes, a disease linked to herbicide exposure. *Id.*; JA30. He also sought similar relief for two additional claims filed in 2007. JA85, JA30.

Mr. Mallory argued that the truncated presumptive exposure window in the 2003 manual rule was arbitrary and irrational because it ignored the importance of residual exposure. *See* Brief for Appellant. Shortly before oral argument, on July 10, 2013, Mr. Mallory and the DVA settled his claims. JA82. The DVA granted Mr. Mallory service-connection benefits effective as of December 2006 for his diabetes claim, and as of 2007 for his other claims. JA85. Although the stipulated agreement stated it was nonbinding precedent and the DVA admitted no error, the agreement also stated that the DVA "anticipate[d] that should there be similarly situated appeals to the U.S. Court of Appeals for Veterans Claims, those Appellants would receive similar treatment." JA86.

### E.   Petitioners' Request to Amend the Effective Date

On January 28, 2014, six months after the DVA settled with Mr. Mallory, Petitioners wrote a letter to the Secretary of the DVA requesting that he change the effective date of the 2011 regulation to the date the 2003 manual rule was announced.  JA32.  Petitioners argued that the 2003 manual rule arbitrarily excluded the 25 months of residual exposure recognized by Congress in the Veterans Benefits Act, and that the 2011 regulation's erroneous effective date failed to fully correct that error.  JA33-34.  Because the DVA's selection of a February 2011 effective date was also arbitrary and capricious, Petitioners asked that it be changed to the date the 2003 manual rule was announced, or in the alternative, that the DVA change the 2003 manual rule to provide the same period of presumed exposure as the 2011 regulation, which would afford veterans identical relief.

Petitioners requested a response within 90 days.  JA32.  After six months without a response, Petitioners filed a petition for review with this Court.  Approximately one month later, on July 10, 2014, Petitioners received a response from the DVA.  JA24.  In that letter, the DVA formally rejected Petitioners' request to change the effective date of the 2011 regulation.  *Id.*

-13-

**F.**     <u>The DVA's July 10, 2014 Denial of Petitioner's Request for Rulemaking</u>

The DVA rejected Petitioners' request to change the effective date of the 2011 regulation on multiple grounds. JA24. First, the DVA argued that it did not have the authority to set an earlier effective date. JA27. The DVA construed 38 U.S.C. § 5110(g) as a bar against any benefits award under the 2011 regulation for any period before the 2011 regulation was effective. JA27. The DVA contended that it could not circumvent Section 5110(g) by issuing an earlier effective date because under *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)*,* it would need an express grant of authority to issue retroactive regulations. JA27-28. The DVA interpreted its rulemaking authority to be more limited under 38 U.S.C. § 501(a), permitting retroactive regulations only if the regulation benefits rather than burdens veterans, and is in accordance with other veteran benefits statutes. JA28. The DVA concluded it would be inappropriate and inconsistent with Section 5110(g) to issue retroactive regulations as a routine matter, and that there was nothing exceptional about this case. *Id.*

The DVA argued that the circumstances of the 2011 amendment did not warrant a departure from its usual practice of setting the effective date 30 days after publication because the 2011 regulation was the result of ordinary incremental policy changes. JA29. Thus, the DVA concluded, assigning a retroactive effective date in this circumstance but not others would be unfair. *Id.*

-14-

The DVA went on to state that selecting a retroactive effective date for the 2011 regulation could involve a difficult and potentially arbitrary determination, compounding the inequity of departing from its normal practice in this case. *Id.*

Finally, the DVA argued that a retroactive effective date could cause confusion. *Id.* Adjudicators and claimants might overlook the retroactive regulation, causing errors and increasing the complexity of adjudications. *Id.* For instance, a retroactive effective date could make it difficult for adjudicators assessing the finality of a claim to determine what regulations were in effect at the time of the prior decision. JA30. For all of these reasons, the DVA declined to change the 2011 regulation's effective date.

## STANDARD OF REVIEW

The Federal Circuit reviews petitions brought under 38 U.S.C. § 502 according to the standards set forth in 5 U.S.C. § 706 (2000). *See Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 314 F.3d 1373, 1378 (Fed. Cir. 2003). Under Section 706, courts must set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C § 706(2)(A). "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality,

-15-

and relative expertness, and to the persuasiveness of the agency's position." *United States v. Mead Corp*., 533 U.S. 218, 228 (2001).

"Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Christensen v. Harris Cnty*., 529 U.S. 576, 587 (2000) (referencing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)); *Mead*, 533 U.S. at 234 ("[C]lassification rulings are best treated like interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . [t]hey are beyond the *Chevron* pale[.]" ). Accordingly, the DVA's July 10, 2014 letter, which provides the DVA's interpretation of its rulemaking authority and its rationale behind the 2011 regulation's effective date, is not entitled to *Chevron* deference. *Id.* At most, it is entitled to respect to the extent it has the power to persuade. *Christensen*, 529 U.S. at 587.

Finally, some level of deference notwithstanding, in veterans' cases such as this "interpretive doubt is to be resolved in the veteran's favor. . . ." *Brown v. Gardner*, 513 U.S. 115, 117-18 (1994); *Hodge v. West*, 155 F.3d 1356, 1361 n.1 (Fed. Cir. 1998) (same).

## SUMMARY OF ARGUMENT

The 2011 regulation's effective date is at least eight years too late.  Under 38 U.S.C. § 5110(g), a veteran is not entitled to benefits for any period before the effective date of the act or administrative issue that creates the entitlement.  The original administrative issue creating Korean DMZ veterans' right to a presumption of herbicide exposure was the 2003 manual rule.  JA26.  The 2011 regulation corrected the arbitrarily narrow presumed exposure period originally set forth in that 2003 rule.  Because an amended law properly dates back to the original rule's effective date, Section 5110(g) does not bar an earlier effective date for the 2011 regulation.

Because an earlier effective date is permissible under Section 5110(g), the question remains whether the February 24, 2011 effective date is valid.  It is not.  DVA action must be set aside if it is arbitrary and capricious or contrary to law.  Here, the DVA's "basic entitlement" statute requires the DVA to compensate a veteran disabled from a disease or injury incurred or aggravated during service.  Once the DVA recognized that the window of presumed exposure set forth in the 2003 manual rule was arbitrarily narrow, it had a duty to apply the broader presumption of exposure to pending claims filed after the 2003 manual rule was announced.  Continuing to apply an outdated presumption to veterans' pending claims for pre-2011 benefits denies those veterans mandatory relief.

In addition, the DVA's failure to apply the 2011 regulation to pending claims for pre-2011 benefits is arbitrary and capricious. The 2011 regulation's effective date preserves the 2003 manual rule's application to pre-2011 benefits for unresolved but timely filed pre-2011 claims. As a result, the DVA currently applies two conflicting evidentiary standards to the same veteran for the same service. There is no rational justification for this result. The eight-year gap between the announcement of the 2003 manual rule and publication of the 2011 regulation is entirely the result of the DVA's failure to abide by APA rulemaking procedures. Without explanation, the DVA waited six years to notice the 2003 manual rule for public comment. As a result, it took that long to correct the 2003 manual rule's arbitrarily narrow window of presumed exposure, which nonetheless remains in effect for pre-2011 claims due to the 2011 regulation's erroneous effective date.

Because the DVA's selection of the February 24, 2011 effective date was arbitrary and capricious, that effective date should be set aside. Indeed, as the regulatory scheme now stands, that effective date creates arbitrary classifications among veterans in violation of their Fifth Amendment right to due process.

For all of these reasons, this Court can and should set aside the 2011 regulation's February 24, 2011 effective date. If for any reason the DVA is unable to amend its 2011 regulation, it should issue new instructions to amend the 2003

-18-

manual rule to eliminate the arbitrary treatment of veterans who served in the Korean DMZ between July 1969 and September 1971.

## ARGUMENT

## I.    <u>INTRODUCTION</u>

Under DVA regulations, a veteran is entitled to disability benefits for diseases connected to herbicide exposure if he can prove the fact of exposure, either by (1) the operation of a presumption of exposure based on the veteran's time and place of service, or (2) proof of actual exposure. Logically, only one of these two evidentiary standards can apply to a single veteran to determine a single fact: whether the veteran was exposed to herbicide during his military service.

Yet, as a result of the 2011 regulation's erroneous effective date, some veterans' pending claims for Agent-Orange related benefits are subject to both standards simultaneously. An affected veteran's pending claims for pre-2011 benefits are subject to the "actual exposure" standard, while the same veteran's pending claims for post-2011 benefits, which are based on the same time and place of service, are presumptively service-connected. Thus, under the DVA's perverse scheme, in resolving a single claim by a single veteran for disability benefits for an herbicide-associated disease beginning prior to 2011, the DVA will make two irreconcilable findings of historical fact. The DVA will find that the veteran was exposed to herbicide during his Korean DMZ service in awarding post-2011

-19-

benefits (by operation of the presumption), but will find that the veteran was not exposed to such herbicide during that same service for purposes of any pre-2011 benefits (for lack of actual proof). The same pending claim brought by the same veteran based on the same service yields two different results.

The 2011 regulation's February 24, 2011 effective date is the source of this inconsistency. No law bars the DVA from adopting an earlier effective date. Because the 2011 regulation's effective date is arbitrary and capricious and contrary to law, it can and should be set aside.

## II.     SECTION 5110 DOES NOT BAR AN EARLIER EFFECTIVE DATE FOR THE 2011 REGULATION

The DVA argues that its hands were tied on the effective date by section 5110(g) of title 38 of the United States Code. JA27. The DVA misapplies that statute. Section 5110(g) states, "where compensation . . . is *awarded or increased* pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. . . ." 38 U.S.C. § 5110(g) (emphasis added). Thus, a veteran is not entitled to benefits that pre-date the Act or administrative issue creating an entitlement to benefits ("compensation . . . is awarded"), or increasing the amount of benefits ("compensation . . . is . . . increased"). The DVA argues that because the 2011 regulation created "liberalized evidentiary standards" by broadening the period in which the presumption of

-20-

exposure applied, JA26, section 5110(g) prohibits an effective date of benefits awards that is earlier than the effective date of the 2011 regulation.  *See* JA27.

The 2011 regulation eases the burden of proof required for Korean DMZ veterans to establish service-connection for certain diseases related to herbicide exposure.  *See* 38 C.F.R. § 3.307(a)(6)(iv) ("A veteran who, during active military, naval, or air service, served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the Department of Defense, operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, ***shall be presumed to have been exposed during such service to an herbicide agent***, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service.") (emphasis added).  Before the 2011 regulation was published, the 2003 manual rule afforded veterans the same presumption, but for a narrower window of service.  *See* JA69-81 (establishing a presumption of exposure for veterans who served in the Korean DMZ between April 1, 1968 to July 31, 1969).

The DVA therefore began conceding exposure based on service in the Korean DMZ in 2003.  *See* JA26, JA69-81.  The effective date of an amended or corrected provision entitling a veteran to benefits is properly set as the effective date of the original law.  When the DVA revised an evidentiary standard applicable to claims for injuries aggravated during service, for example, it made the corrected

-21-

regulation effective 18 years before it was published based on the effective date of
the statute triggering the correction.  *See Routen v. West*, 142 F.3d 1434, 1438
(Fed. Cir. 1998) ("In 1992, the VA amended [38 C.F.R. 3.306] to extend the 'clear
and unmistakable evidence' rebuttal standard to veterans with peacetime service
. . . the regulation's effective date was May 1, 1974."); 57 Fed. Reg. 59296 (Dec.
15, 1992) (explaining that the amendment to 38 C.F.R. 3.306 was effective May, 1,
1974 based on the effective date of related statute 38 U.S.C. 1137, which was set in
Pub. L. No. 93-295, 88 Stat 180 (May 31, 1974)); *McCay v. Brown*, 9 Vet. App.
183, 187 (1996) ("[38 C.F.R. § 3.311a] specifically stated that soft tissue sarcomas
were not in the category of diseases associated with dioxin exposure . . . [but] [o]n
October 15, 1991, the Secretary amended [this] regulation, effective retroactively
to September 25, 1985, to add as a presumed service-connected condition soft
tissue sarcomas[.]"), *aff'd*, 106 F.3d 1577 (Fed. Cir. 1997); *Hunter v. Shinseki*, 538
F. App'x 904, 905 (Fed. Cir. 2013) (acknowledging same).

Indeed, if the doctrine were otherwise, no veteran could ever successfully
challenge a DVA benefits regulation and receive the benefits to which he is
entitled.  A hypothetical illustrates the problem:  if the DVA promulgates an
unlawful regulation in 2000; a veteran files a claim that the DVA denies under the
regulation in 2003; this Court sets the regulation aside in 2005 on petition of an
aggrieved veteran; and the DVA promulgates a corrected regulation on remand in

-22-

2008; then the relevant date of the "administrative issue" under section 5110(g) must be the date of the *original* regulation awarding or increasing compensation (2000), and not the *corrected* regulation (2008), or the veteran would have no relief. Congress would not have intended such a scheme.

There is no dispute that the 2003 manual rule's narrower window of presumed exposure was applied for eight years prior to the 2011 regulation's publication. *See* JA26. Because the corrected window of presumed exposure in the 2011 regulation is based on a rule that was announced in 2003, Section 5110(g) cannot bar benefit awards accruing after that date.

## III. THE 2011 REGULATION'S EFFECTIVE DATE IS ARBITRARY AND CAPRICIOUS AND CONTRARY TO LAW

This Court has jurisdiction to review and set aside agency regulations that are contrary to law or constitutional right, or that are arbitrary and capricious. 38 U.S.C. § 502 (authorizing review of DVA rulemaking pursuant to chapter 7 of title 5); 5 U.S.C. § 706 ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"). Because the 2011 regulation's effective date is contrary to law and arbitrary and capricious, it should be set aside.

A.   **The 2011 Regulation's Effective Date Is Contrary to Law Because It Violates 38 U.S.C. § 1110.**

The 2011 regulation's effective date is contrary to law because it violates the DVA's obligations under its "basic entitlement" statute.  Section 1110 of title 38 of the United States Code requires the DVA to compensate veterans for disabilities incurred or aggravated during service.  *Id.* ("[f]or disability resulting from personal injury suffered or disease contracted in line of duty . . . in the active military, naval, or air service, during a period of war, the United States *will pay to any veteran thus disabled* and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter. . . .") (emphasis added).  Put another way, once the DVA determines that a veteran's injury is service-connected, it must compensate the veteran for any resulting disabilities.  *Cushman v. Shinseki*, 576 F.3d 1290, 1298-99 (Fed. Cir. 2009) ("Applications for benefits cannot be denied unless the DVA factually determines that the applicant does not suffer from a disability originating from service.").

Under the 2011 regulation, the DVA presumes that veterans who served from April 1968 to August 1971 in the Korean DMZ were exposed to toxic herbicides, and compensates them for associated diseases accordingly.  *See* 38 C.F.R. § 3.307(a)(6)(iv).  Yet, the pre-2011 portion of the same veterans'

-24-

pending claims is decided differently, based on the 2003 manual rule, which

adopted a far narrower 16 month window of presumed exposure. As a result,

veterans who cannot prove actual exposure and served in the Korean DMZ during

the 25 month period recognized for purposes of service-connection under the 2011

regulation, but not the 2003 manual rule, are denied compensation for the period

after they filed their claims and before the 2011 regulation became effective, even

though those claims are not yet final.

Under 38 U.S.C. § 1110, the DVA does not have discretion to deny

compensation once it has determined that a veteran is entitled to recover for his or

her injuries. *Cushman*, 576 F.3d at 1298 ("Veteran's disability benefits are

nondiscretionary, statutorily mandated benefits. A veteran is entitled to disability

benefits upon a showing that he meets the eligibility requirements set forth in the

governing statutes and regulations."). Benefits awarded generally date back to the

date of receipt of the claim, assuming the injury did not develop later. *See*

38 U.S.C. § 5110(a) ("the effective date of an award based on an original claim . . .

shall be fixed in accordance with the facts found, but shall not be earlier than the

date of receipt of application therefor."). Veterans with pending claims whom the

DVA has already determined were presumptively exposed to toxic herbicides

should receive the same treatment. The DVA's decision instead to issue an

effective date for the 2011 regulation that limits veterans' recovery to post-2011

-25-

benefits regardless of when they filed their claim or whether it remains pending is contrary to the basic entitlement statute. *See* 38 U.S.C. § 1110.

No law or case prevents this Court or the DVA from implementing an earlier effective date to harmonize the DVA's treatment of pending claims in accordance with federal law. As demonstrated above, Section 5110(g) does not prohibit an earlier effective date. Similarly, if the effective date were earlier, the 2011 regulation would not be barred as a "retroactive" regulation. *See Bowen*, 488 U.S. at 208 ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). In determining whether a law is retroactive, "[t]he essential inquiry . . . is whether the new provision attaches new legal consequences to events completed before its enactment." *Vartelas v. Holder*, 132 S. Ct. 1479, 1491 (2012) (citation and internal quotation marks omitted); *White v. United States*, 191 U.S. 545 (1903) (increasing pension benefits for prior service involves retroactivity). The 2011 regulation does not attach new burdens on the government for past events.

The DVA originally created a presumption of exposure making it easier for veterans who served in the Korean DMZ during the 16 month period when herbicides were applied to receive benefits through its manual rules in 2003. JA69-81. Thus, the 2011 regulation did not change the government's burden to

compensate veterans. That regulation modified the 2003 manual rule by expanding the period of presumed exposure to account for residual herbicides to correct the illegality of that rule: *i.e.,* the procedural defect that this substantive rule was not promulgated by notice and comment, and the arbitrariness of denying a presumption to veterans exposed to herbicide residuals. Accordingly, setting the 2011 regulation's effective date for any point after 2003 when the underlying manual rules were first announced would not create a retroactive burden on the government.

In any case, the DVA acknowledges there is no prohibition against applying rules favorable to veterans retroactively. A DVA General Counsel opinion states that "an agency may provide for the retroactive application of a rule that benefits claimants." *See* JA63 ("Accordingly, we conclude that VA has authority to provide for the retroactive application of its procedural regulations to the extent doing so will benefit rather than burden claimants."). Indeed, retroactivity has long been a necessary part of the herbicide exposure regulatory scheme. "In 1984, Congress recognized that it would be virtually impossible to determine on a case-by-case basis whether exposure to herbicides in Vietnam caused a disease in a particular veteran." *LeFevre v. Sec'y, Dep't of Veterans Affairs*, 66 F.3d 1191, 1193 (Fed. Cir. 1995) (citing 130 Cong. Rec. 13,159 (May 22, 1984) (remarks of Senator Simpson)). "It therefore decided to require the Secretary to create or reject

-27-

a presumption-of-service connection for particular diseases, based upon the statistical probability of such connection, as reflected in scientific studies of the relationship between those diseases and exposure to herbicides and the incidence of those diseases in persons and animals subject to herbicide exposure." *Id.*

Because diseases related to herbicide exposure take time to manifest, and the science establishing a connection between the two has progressed slowly since the Vietnam era, the DVA has amended regulations related to herbicide exposure before, and included retroactive effective dates. *See, e.g.*, *McCay*, 9 Vet. App. at 187 (acknowledging that presumption of service-connection for soft tissue sarcoma was effective as of original regulation's effective date); 55 Fed. Reg. 43,123, 43,124 (Oct. 26, 1990) (publishing regulation that presumptively service-connected non-Hodgkins lymphoma with a retroactive effective date of August 5, 1964; stating that the Secretary's decision "was an exercise of his discretion" "fully consistent with VA's longstanding policy to administer the law under a broad interpretation for the benefit of veterans and their dependents").

Importantly, for almost two decades the DVA has awarded veterans who served in Vietnam during the Vietnam era service-connection for benefits claims based on diseases linked to herbicide exposure dating back to the date the veteran's claim was filed, not the date the disease was first service-connected. *See* 78 Fed. Reg. 54,763, 54,764 (Sept. 6, 2013) (citing *Nehmer v. U.S. Veterans' Admin.*, 712

F. Supp. 1404 (N.D. Cal. 1989) and later cases as bases for 38 C.F.R. § 3.816(c)

(requiring a disease that is presumptively service-connected based on herbicide

exposure in Vietnam to receive an effective date retroactive to the date the DVA

received the veteran's claim)).  In other words, the DVA awards veterans benefits

based on claims filed before the effective date of the liberalizing regulation on a

regular basis.

Furthermore, the DVA has made *other* liberalizing evidentiary presumptions

retroactive before.  *See* 57 Fed. Reg. 59,296 (Dec. 15, 1992) (amending evidentiary

burden on rebuttal for peacetime servicemembers' aggravated injury claims in

1992 and setting May 1, 1974 effective date).  DVA precedent therefore supports

applying an earlier effective date to the 2011 regulation, consistent with veterans'

interests.  *See Brown*, 513 U.S. at 117-18 ("interpretive doubt is to be resolved in

the veteran's favor").

Because the 2011 regulation's effective date violates the DVA's obligations

under the basic entitlement statute, and nothing bars the DVA from correcting this

error, the February 24, 2011 effective date can and should be set aside.

**B.    The 2011 Regulation's Effective Date Is Arbitrary and Capricious Because There Is No Rational Basis for Applying Two Conflicting Evidentiary Standards to a Single Pending Claim.**

The 2011 regulation's effective date is also invalid because it is arbitrary and

capricious.  *See* 5 U.S.C. § 706(2)(A).  "Normally, an agency rule would be

-29-

arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Put differently, an agency's actions must be "logical and rational," and the agency must provide support for its position. *Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006); *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 49 ("We have frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner. . . .") (citations omitted). Because there is no rational basis for the DVA's selection of the 2011 regulation's February 24, 2011 effective date, it should be set aside.

The DVA agrees the 16 month window of presumptive exposure it announced in the 2003 manual rule was overly narrow. JA97. Yet, without explanation, the DVA set the 2011 regulation's effective date eight years later, preserving the 2003 manual rule's application to pending claims for pre-2011 benefits. That decision has led to the DVA's application of two different and irreconcilable fact-findings for the same veteran based on the same service. On the one hand, the DVA will determine that a veteran is not entitled to compensation for

pre-2011 benefits because he failed to prove herbicide exposure.  On the other, the DVA will find that the same veteran is entitled to post-2011 benefits because under the 2011 regulation exposure is presumed.  As discussed above, no law requires this result.

The DVA justifies exercising its discretion to adopt the February 24, 2011 effective date based on fairness and the avoidance of confusion.  JA29-30.  Both arguments lack merit.  The DVA contends that an earlier effective date would be inequitable because the lengthy and incremental process that led to the 2011 regulation's publication was ordinary, and does not justify a departure from the DVA's usual practice of adopting an effective date 30 days past the date of publication.  JA28-29.  The DVA also asserts that because the date the 2003 manual rule was first applied to veterans may be uncertain, adopting an earlier effective date could be arbitrary.  *Id.*  These arguments conveniently ignore the DVA's role in the 2011 amendment's delayed publication.

The 2011 regulation was promulgated incorrectly and therefore its effective date must be differently assigned.  In violation of substantive rulemaking procedures, the DVA failed to notice the 2003 manual rule for public comment for over six years.  JA69-81, JA88.  Under 38 U.S.C. § 501(d), before issuing a substantive rule or regulation, the DVA is required to publish notice of a proposed rule in the Federal Register and allow comment from interested parties for a

-31-

minimum of thirty days. *Id.*; *see* 5 U.S.C. § 553(b)-(d). "A substantive rule represents an agency's exercise of the power delegated to it by Congress to effect *a change in existing law* or policy or . . . affect individual rights and obligations." *See Guerra v. Shinseki*, 642 F.3d 1046, 1051 (Fed. Cir. 2011) (internal citations and quotation marks omitted) (emphasis added). "A rule is substantive in nature when it has the force of law and narrowly limits administrative action." *Fugere v. Derwinski*, 1 Vet. App. 103, 107 (1990), *aff'd*, 972 F.2d 331 (Fed. Cir. 1992) (internal citations and quotation marks omitted). "In contrast, an interpretive rule, is one that merely clarifies or explains an existing rule or statute." *Id.* (internal citations and quotation marks omitted).

"If an agency announces new substantive rules, those rules are subject to the procedural requirements of [the APA] even if they are not formally published as agency regulations." *Guerra*, 642 F.3d at 1051 n.2 ("The Veterans Court has in the past found that certain provisions of the Manual constituted substantive rules for purposes of the APA."); *see also Fugere*, 1 Vet. App. at 107 ("Paragraph 50.13(b) was more than a mere procedural guideline; it affected a substantive right and its placement in a procedural manual cannot disguise its true nature as a substantive rule."). Accordingly, a substantive rule announced in the DVA manual must be noticed for public comment for a minimum of 30 days before issuance. 38 U.S.C. § 501(d).

-32-

The 2003 manual rule is a change in existing law affecting veterans' rights to benefits—without the presumption of exposure it provides, many Korean DMZ veterans would be unable to recover for injuries related to Agent-Orange exposure. *See Guerra*, 642 F.3d at 1051.  The 2003 manual rule has the force of law and narrowly limits agency action because DVA adjudicators are obligated to follow DVA manual rules, including evidentiary presumptions, when adjudicating veterans' claims.  *See Fugere*, 1 Vet. App. at 107; JA76 (directing adjudicator to concede exposure when certain conditions are met).  Thus the 2003 manual rule was a substantive regulation.

This Court has found the DVA's adoption of a new evidentiary presumption substantive before.  *See LeFevre*, 66 F.3d at 1197 ("The policy decision that the 1991 Act required the Secretary to make was whether or not, under the Act's standards, to establish a presumption of service connection for various diseases. . . . ***The Secretary changed existing law by establishing or refusing to establish a presumption.***") (emphasis added); *cf. Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 378 (1998) (noting that irrebuttable evidentiary presumptions are "substantive rules of law").  Indeed, other evidentiary rules in the DVA's adjudication manual have been considered substantive.  *See Hayes v. Brown*, 4 Vet. App. 353, 360 (1993) ("To the extent that these Manual provisions affect what post-date-of-death evidence may be considered, they have the force of

-33-

law as they affect a substantive right.") (alterations omitted) (citation omitted). Because the 2003 manual rule is substantive, it should have been noticed for public comment pursuant to the APA before it took effect.

Despite these requirements, the DVA applied the 2003 manual rule to veterans' claims for six years before noticing it for public comment. JA69-81, JA88. Once the rule was finally noticed, public comments led the DVA to recognize the arbitrary narrowness of the rule's period of presumed exposure. JA97. A year and a half later (and eight years after the 2003 manual rule was first applied), the corrected 2011 regulation was published. These unique circumstances justify a departure from the DVA's typical practice of making new regulations effective 30 days from publication. Contrary to the DVA's assertions, failing to correct the 2011 regulation's effective date—not a departure from agency norms—would yield an unfair result in this case.

The DVA's argument that an earlier effective should not apply because the date Korean DMZ veterans were first entitled to a presumption of exposure may be uncertain is equally hollow. The DVA has admitted that it began conceding exposure for Korean DMZ veterans through its manual rules in 2003. JA26. The DVA does not explain why it would be difficult to identify the exact date these rules were first announced, nor whether anyone has tried and failed to do it. The DVA's insinuations aside, there is no reason to believe this would be an

overwhelming task. The DVA presumably has copies of earlier versions of its adjudication manuals, and it must have consulted some record to identify the year these instructions were handed down. *See* JA26 (stating that the DVA issued instructions to concede exposure to Korean DMZ veterans in its manual rules in 2003). Assuming, therefore, that the date of issuance can be identified, there is nothing arbitrary about using it as the effective date for the 2011 regulation. Amended rules are properly made effective on the date of the original rule's announcement. *Cf. McCay*, 9 Vet. App. at 187 (making presumption of service-connection for soft tissue sarcoma effective as of original regulation's effective date).

In the event it truly is too burdensome for the DVA to identify the day and month the 2003 manual rule was announced, there is an obvious and non-arbitrary alternative. Both the statute codifying benefits for children of Korean DMZ veterans with spina bifida under the Veterans Benefits Act, 38 U.S.C. § 1821, and the related portion of the 2003 manual rule, JA71, were made effective December 16, 2003. *Id.* In the absence of information regarding the precise date the 2003 manual rule granted similar rights to veterans, the DVA should adopt December 16, 2003 as the 2011 regulation's effective date. That regulation and the manual rule it stems from granted the same rights to veterans in 2003 that their children received as of December 16, 2003. Thus, one way or another, the DVA has the

ability to adopt a proper effective date for the 2011 regulation, and the self-serving argument that its selection could be arbitrary should be given no weight.

Finally, the DVA argues that an earlier effective date should not apply to the 2011 regulation because it would cause confusion. JA29-30. Specifically, the DVA contends a retroactive effective date might be overlooked by claimants and adjudicators, and may create problems adjudicating the finality of claims. JA30. If agency action could be justified on administrative ease alone, then it would never be arbitrary and capricious. The DVA's administrative shortcomings cannot justify the broad application of an unfair rule. Certainly such reasoning must fail where, as here, any potential administrative headache is the predictable result of the DVA's failure to follow its own procedures. Had the DVA noticed the 2003 manual rule for public comment before application as commanded by the APA, there would be no need to apply a retroactive effective date to veterans' pending claims.

In any event, the DVA's argument is flawed because an earlier effective date is unlikely to actually cause significant confusion. The DVA has successfully and regularly applied retroactive effective dates to various claims for over two decades. *See* 38 C.F.R. § 3.816(c) (regulation implementing *Nehmer*, 712 F. Supp. 1404; requiring a disease that is presumptively service-connected based on herbicide exposure in Vietnam to receive an effective date retroactive to the date the DVA

-36-

received the veteran's claim). Accordingly, the DVA's rationale for adopting the 2011 regulation's February 24, 2011 effective date is inadequate, and equally important, inequitable, given that the DVA's own violations created the problem it now finds too troubling to solve.

### C. The DVA's Disparate Treatment Violates Veterans' Constitutional Rights.

For the same reasons the 2011 regulation's effective date is arbitrary and capricious under 5 U.S.C § 706(2)(A), it also violates veterans' Fifth Amendment rights. The Fifth Amendment bars the government from depriving a person of a social welfare benefit based on "patently arbitrary" and irrational distinctions. *Flemming v. Nestor*, 363 U.S. 603, 611 (1960) ("[W]hen we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."). A veteran's "entitlement to benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution." *Cushman*, 576 F.3d at 1298.

The DVA's application of an outdated presumption to pending claims for pre-2011 benefits brought by veterans who served in the Korean DMZ from July 1969 through August 1971 is patently arbitrary and irrational. The DVA recognized that these veterans were likely exposed to herbicides causing disease in

the 2011 regulation. Once the DVA made that finding, it was arbitrary to deny its application to pending pre-2011 claims. The foundation for this error—the DVA's application, contrary to mandatory rulemaking procedures, of a narrow period of presumed exposure that failed to account for the long-recognized effects of residual herbicides—further violated these veterans' rights to due process. To remedy these infringements, the 2011 regulation's effective date should be set aside.[3]

### D. In the Alternative, the DVA Should Amend the 2003 Manual Rule to Eliminate the Arbitrary Mistreatment of Veterans Exposed to Herbicide Residuals Between July 1969 and August 1971.

Even if the DVA cannot change the effective date of Rule § 3.307(a)(6)(iv), it should issue new instructions to change the 2003 manual rule that it still applies to claims for benefits before February 24, 2011 to eliminate the unwarranted disparity in the treatment of veterans. The DVA's disregard of its obligations has created this predicament, and veterans should not suffer from that abdication of responsibility.

---

[3] The arguments and remedies requested herein are generally applicable to the 2003 manual rule provision concerning benefits for Korean DMZ veterans' children with spina bifida, *see* JA69, and its related regulation, 38 C.F.R. § 3.814(c)(2) (effective Feb. 24, 2011). *See also* 76 Fed. Reg. 4245, 4248 (Jan. 25, 2011). Children who brought claims after 2003 and before 2011 are currently denied pre-2011 benefits based on the same unlawful and arbitrary effective date.

# CONCLUSION

Proving a person was exposed to Agent Orange over 40 years ago is difficult, if not impossible.  The 2003 manual rule's presumption of exposure for veterans serving in the Korean DMZ was a welcome attempt to ease their burden of proof, but it was poorly executed.  Had the DVA followed mandatory rulemaking procedures, it would have established the right rule on the right date.  Law, reason, and fairness require that the 2011 regulation's effective date be set aside so the DVA is compelled to end an outdated rule's unjust and arbitrary application.  In the alternative, the DVA should amend the 2003 manual rule to adopt the 41 month period of presumed exposure set forth in the 2011 regulation.

October 24, 2014

Respectfully submitted,

   /s/ Stephen B. Kinnaird
Stephen B. Kinnaird, *Attorney of Record*
Danielle C. Doremus
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone:  (202) 551-1700
stephenkinnaird@paulhastings.com
danielledoremus@paulhastings.com

Barton F. Stichman
Patrick Berkshire
NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1600 K Street, NW, Suite 500

-39-

Washington, DC 20006
Telephone:  (202) 621-5677
bart_stichman@nvlsp.org
patrick@nvlsp.org

*Counsel for Petitioners*
*Michael L. McKinney, the National*
*Veterans Legal Services Program, the*
*Military Order of the Purple Heart,*
*Vietnam Veterans of America, and The*
*American Legion*

## CERTIFICATE OF SERVICE

I, Barbara J. Carr, hereby certify that, on October 24, 2014, a copy of the foregoing Petitioners' Opening Brief was filed electronically.  This filing was served electronically to all parties by operation of the Court's electronic CM/ECF filing system.

Martin F. Hockey, Jr.
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Martin.Hockey@usdoj.gov

Martie S. Adelman
David J. Barrans
U.S. Department of Veterans Affairs
Office of the General Counsel (022B)
810 Vermont Ave., NW, Room 1068
Washington, DC 20420
martie.adelman@va.gov
david.barrans@va.gov

Dated:  October 24, 2014

BY:   /s/ Barbara J. Carr
Barbara J. Carr
**PAUL HASTINGS LLP**
875 15th Street, N.W.
Washington, DC 20005
Tel.:  (202) 551-1972
Fax:  (202) 551-0372
barbaracarr@paulhastings.com

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and this Court's Rule 28(a)(14), I certify the following:

1.    The attached Petitioners' Opening Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 9,018 words (according to the Microsoft Word 2010 count function), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.    The attached Petitioners' Opening Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type style.

October 24, 2014

Respectfully submitted,

    /s/ Danielle C. Doremus
Danielle C. Doremus
Stephen B. Kinnaird, *Attorney of Record*
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone:  (202) 551-1700
stephenkinnaird@paulhastings.com
danielledoremus@paulhastings.com

-42-

Barton F. Stichman
Patrick Berkshire
NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1600 K Street, NW, Suite 500
Washington, DC 20006
Telephone:  (202) 621-5677
bart_stichman@nvlsp.org
patrick@nvlsp.org

*Counsel for Petitioners
Michael L. McKinney, the National
Veterans Legal Services Program, the
Military Order of the Purple Heart,
Vietnam Veterans of America, and The
American Legion*

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

| DESCRIPTION | PAGE NO. |
|---|---|
| 38 C.F.R. §3.307(a)(6)(iv) (2013) | A1-A3 |
| Letter from Department of Veterans Affairs Acting General Counsel Responding to Petition for Review, July 10, 2014 | JA24-31 |

whether the increase is due to the natural progress of the condition. Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during and subsequent to service.

(1) The usual effects of medical and surgical treatment in service, having the effect of ameliorating disease or other conditions incurred before enlistment, including postoperative scars, absent or poorly functioning parts or organs, will not be considered service connected unless the disease or injury is otherwise aggravated by service.

(2) Due regard will be given the places, types, and circumstances of service and particular consideration will be accorded combat duty and other hardships of service. The development of symptomatic manifestations of a preexisting disease or injury during or proximately following action with the enemy or following a status as a prisoner of war will establish aggravation of a disability.

(Authority: 38 U.S.C. 1154)

(c) *Peacetime service prior to December 7, 1941.* The specific finding requirement that an increase in disability is due to the natural progress of the condition will be met when the available evidence of a nature generally acceptable as competent shows that the increase in severity of a disease or injury or acceleration in progress was that normally to be expected by reason of the inherent character of the condition, aside from any extraneous or contributing cause or influence peculiar to military service. Consideration will be given to the circumstances, conditions, and hardships of service.

[26 FR 1580, Feb. 24, 1961, as amended at 57 FR 59296, Dec. 15, 1992]

§ 3.307 **Presumptive service connection for chronic, tropical or prisoner-of-war related disease, or disease associated with exposure to certain herbicide agents; wartime and service on or after January 1, 1947.**

(a) *General.* A chronic, tropical, prisoner of war related disease, or a disease associated with exposure to certain herbicide agents listed in § 3.309 will be considered to have been incurred in or aggravated by service under the circumstances outlined in this section even though there is no evidence of such disease during the period of service. No condition other than one listed in § 3.309(a) will be considered chronic.

(1) *Service.* The veteran must have served 90 days or more during a war period or after December 31, 1946. The requirement of 90 days' service means active, continuous service within or extending into or beyond a war period, or which began before and extended beyond December 31, 1946, or began after that date. Any period of service is sufficient for the purpose of establishing the presumptive service connection of a specified disease under the conditions listed in § 3.309(c) and (e).

(2) *Separation from service.* For the purpose of paragraph (a)(3) and (4) of this section the date of separation from wartime service will be the date of discharge or release during a war period, or if service continued after the war, the end of the war period. In claims based on service on or after January 1, 1947, the date of separation will be the date of discharge or release from the period of service on which the claim is based.

(3) *Chronic disease.* The disease must have become manifest to a degree of 10 percent or more within 1 year (for Hansen's disease (leprosy) and tuberculosis, within 3 years; multiple sclerosis, within 7 years) from the date of separation from service as specified in paragraph (a)(2) of this section.

(4) *Tropical disease.* The disease must have become manifest to a degree of 10 percent or more within 1 year from date of separation from service as specified in paragraph (a)(2) of this section, or at a time when standard accepted treatises indicate that the incubation period commenced during such service. The resultant disorders or diseases originating because of therapy administered in connection with a tropical disease or as a preventative may also be service connected.

(Authority: 38 U.S.C. 1112)

(5) *Diseases specific as to former prisoners of war.* The diseases listed in § 3.309(c) shall have become manifest to

a degree of 10 percent or more at any time after discharge or release from active service.

(Authority: 38 U.S.C. 1112)

(6) *Diseases associated with exposure to certain herbicide agents.* (i) For the purposes of this section, the term "herbicide agent" means a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, specifically: 2,4–D; 2,4,5–T and its contaminant TCDD; cacodylic acid; and picloram.

(Authority: 38 U.S.C. 1116(a)(4))

(ii) The diseases listed at § 3.309(e) shall have become manifest to a degree of 10 percent or more at any time after service, except that chloracne or other acneform disease consistent with chloracne, porphyria cutanea tarda, and acute and subacute peripheral neuropathy shall have become manifest to a degree of 10 percent or more within a year after the last date on which the veteran was exposed to an herbicide agent during active military, naval, or air service.

(iii) A veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. The last date on which such a veteran shall be presumed to have been exposed to an herbicide agent shall be the last date on which he or she served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. "Service in the Republic of Vietnam" includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam.

(iv) A veteran who, during active military, naval, or air service, served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the Department of Defense, operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. *See also* 38 CFR 3.814(c)(2).

(Authority: 38 U.S.C. 501(a), 1116(a)(3), and 1821)

(b) *Evidentiary basis.* The factual basis may be established by medical evidence, competent lay evidence or both. Medical evidence should set forth the physical findings and symptomatology elicited by examination within the applicable period. Lay evidence should describe the material and relevant facts as to the veteran's disability observed within such period, not merely conclusions based upon opinion. The chronicity and continuity factors outlined in § 3.303(b) will be considered. The diseases listed in § 3.309(a) will be accepted as chronic, even though diagnosed as acute because of insidious inception and chronic development, except: (1) Where they result from intercurrent causes, for example, cerebral hemorrhage due to injury, or active nephritis or acute endocarditis due to intercurrent infection (with or without identification of the pathogenic microorganism); or (2) where a disease is the result of drug ingestion or a complication of some other condition not related to service. Thus, leukemia will be accepted as a chronic disease whether diagnosed as acute or chronic. Unless the clinical picture is clear otherwise, consideration will be given as to whether an acute condition is an exacerbation of a chronic disease.

(Authority: 38 U.S.C. 1112)

(c) *Prohibition of certain presumptions.* No presumptions may be invoked on the basis of advancement of the disease when first definitely diagnosed for the purpose of showing its existence to a degree of 10 percent within the applicable period. This will not be interpreted as requiring that the disease be diagnosed in the presumptive period, but only that there be then shown by acceptable medical or lay evidence characteristic manifestations of the disease

to the required degree, followed without unreasonable time lapse by definite diagnosis. Symptomatology shown in the prescribed period may have no particular significance when first observed, but in the light of subsequent developments it may gain considerable significance. Cases in which a chronic condition is shown to exist within a short time following the applicable presumptive period, but without evidence of manifestations within the period, should be developed to determine whether there was symptomatology which in retrospect may be identified and evaluated as manifestation of the chronic disease to the required 10-percent degree.

(d) *Rebuttal of service incurrence or aggravation.* (1) Evidence which may be considered in rebuttal of service incurrence of a disease listed in § 3.309 will be any evidence of a nature usually accepted as competent to indicate the time of existence or inception of disease, and medical judgment will be exercised in making determinations relative to the effect of intercurrent injury or disease. The expression ''affirmative evidence to the contrary'' will not be taken to require a conclusive showing, but such showing as would, in sound medical reasoning and in the consideration of all evidence of record, support a conclusion that the disease was not incurred in service. As to tropical diseases the fact that the veteran had no service in a locality having a high incidence of the disease may be considered as evidence to rebut the presumption, as may residence during the period in question in a region where the particular disease is endemic. The known incubation periods of tropical diseases should be used as a factor in rebuttal of presumptive service connection as showing inception before or after service.

(2) The presumption of aggravation provided in this section may be rebutted by affirmative evidence that the preexisting condition was not aggravated by service, which may include affirmative evidence that any increase in disability was due to an intercurrent disease or injury suffered after separation from service or evidence sufficient, under § 3.306 of this part, to show that the increase in disability was due

to the natural progress of the pre-existing condition.

(Authority: 38 U.S.C 1113 and 1153)

[26 FR 1581, Feb. 24, 1961, as amended at 35 FR 18281, Dec. 1, 1970; 39 FR 34530, Sept. 26, 1974; 43 FR 45347, Oct. 2, 1978; 47 FR 11655, Mar. 18, 1982; 58 FR 29109, May 19, 1993; 59 FR 5106, Feb. 3, 1994; 59 FR 29724, June 9, 1994; 61 FR 57588, Nov. 7, 1996; 62 FR 35422, July 1, 1997; 67 FR 67793, Nov. 7, 2002; 68 FR 34541, June 10, 2003; 76 FR 4248, Jan. 25, 2011]

**§ 3.308 Presumptive service connection; peacetime service before January 1, 1947.**

(a) *Chronic disease.* There is no provision for presumptive service connection for chronic disease as distinguished from tropical diseases referred to in paragraph (b) of this section based on peacetime service before January 1, 1947.

(b) *Tropical disease.* In claims based on peacetime service before January 1, 1947, a veteran of 6 months or more service who contracts a tropical disease listed in § 3.309(b) or a resultant disorder or disease originating because of therapy administered in connection with a tropical disease or as a preventative, will be considered to have incurred such disability in service when it is shown to exist to the degree of 10 percent or more within 1 year after separation from active service, or at a time when standard and accepted treatises indicate that the incubation period commenced during active service unless shown by clear and unmistakable evidence not to have been of service origin. The requirement of 6 months or more service means active, continuous service, during one or more enlistment periods.

(Authority: 38 U.S.C. 1133)

[39 FR 34530, Sept. 26, 1974]

**§ 3.309 Disease subject to presumptive service connection.**

(a) *Chronic diseases.* The following diseases shall be granted service connection although not otherwise established as incurred in or aggravated by service if manifested to a compensable degree within the applicable time limits under § 3.307 following service in a period of war or following peacetime



**Office of the General Counsel**
Washington DC 20420

**JUL 10 2014**

Mr. Stephen B. Kinnaird
Paul Hastings LLP
875 15th Street, NW
Washington, DC 20005

In Reply Refer To:

Dear Mr. Kinnaird:

This is in response to your request that the Department of Veterans Affairs (VA) revise a 2011 amendment to 38 C.F.R. § 3.307(a)(6), regarding herbicide exposure of certain Veterans who served in or near the Korean demilitarized zone (DMZ), to make that amendment retroactively effective as of November 1, 2004, and that VA stay the current regulation's effective date as to nonfinal claims of affected Veterans. You filed this request on behalf of Michael L. McKinney, National Veterans Legal Services Program, Military Order of the Purple Heart, and Vietnam Veterans of America. The Secretary of Veterans Affairs has asked that I respond on his behalf. VA is firmly committed to ensuring the accurate, fair, and efficient adjudication of claims for compensation for disabilities, including those related to Agent Orange exposure. Thus, we have considered your request as a petition for rulemaking under 5 U.S.C. § 553(e).

For the reasons explained below, we decline to revise our regulation as requested in your petition. The 2011 amendment to section 3.307(a)(6) was a liberalizing substantive rule. Consistent with generally applicable principles of administrative law, VA's usual and longstanding practice is to make such substantive rules effective prospectively from the date that is thirty days after the date of their publication in the Federal Register. This ensures that all new liberalizing regulations are applied in a fair, consistent, and efficient manner. Assigning a retroactive effective date to this rule would be inconsistent with the approach both VA and Congress generally have followed in establishing liberalizing regulations and statutes benefitting other groups of Veterans, making those provisions effective prospectively from the date of enactment or issuance or from a designated future date. Absent exceptional circumstances, we decline to depart from this established practice.

The 2011 amendment to section 3.307(a)(6) was a liberalizing substantive rule, which established a presumption of herbicide exposure not required by any statute. Section 102 of the Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2651, 2653, amended chapter 18 of title 38, United States Code, by adding subchapter III to provide benefits for children with spina bifida of Veterans "of covered service in Korea." Section 1801(c) of title 38, United States Code, states that "a veteran of covered service in Korea" is any individual who served in the active military, naval, or air service in or near the DMZ in Korea during the period beginning on September 1, 1967, and ending on August 31, 1971, and is determined by the Secretary of Veterans Affairs, in

Page 2.

Mr. Stephen B. Kinnaird

consultation with the Secretary of Defense, "to have been exposed to a herbicide agent during such service in or near the [DMZ]."

In 2009, based upon information provided by the Department of Defense (DoD), VA proposed to implement section 102 of Pub. L. No. 108-183 with a regulation that would presume that a Veteran had "[c]overed service in Korea" for purposes of 38 U.S.C. § 1821(c) if the Veteran served between April 1968 and July 1969 in a military unit determined by DoD and VA to have operated in or near the Korean DMZ in which herbicides were applied. 74 Fed. Reg. 36,640, 36,641 (Jul. 24, 2009). VA also proposed that, if a Veteran served in or near the Korea DMZ between September 1, 1967, and August 31, 1971, but not within the time periods and geographic locations that would qualify for a presumption under the proposed rule, such service would qualify as "[c]overed service in Korea" for purposes of 38 U.S.C. § 1821(c) only if VA finds that the Veteran was actually exposed to herbicides during the period. Id. at 36,642.

VA also stated in the notice of proposed rulemaking that it would be illogical to conclude that the children with spina bifida of the covered Veterans have the disability due to exposure to herbicides but not to presume that the Veterans themselves were exposed to herbicide agents, for purposes of deciding such Veterans' claims under chapter 11 of title 38, United States Code, for compensation for disabilities associated with that exposure. Id. VA therefore proposed to add 38 C.F.R. § 3.307(a)(6)(iv) creating a presumption of herbicide exposure based on service in or near the Korean DMZ for the same Veterans. Id. VA explained that there was "no specific statutory authority for providing a presumption of exposure to herbicide agents to veterans who served in Korea," but that VA proposed to create such a presumption under its general rulemaking authority. Id.

In response to comments received regarding the proposed rules, VA published a final-rule notice on January 25, 2011, that extended the qualifying period of "covered service in Korea" for chapter 18 purposes and the period in which herbicide exposure is presumed for chapter 11 purposes to April 1, 1968, through August 31, 1971. 76 Fed. Reg. 4245-46 (Jan. 25, 2011). VA stated that "it is reasonable and consistent with the intent of Congress to concede exposure for veterans who served in or near the Korean DMZ after herbicide exposure application ceased, because of the potential for exposure to residuals of herbicides applied in that area." Id. at 4245. The final rule was effective February 24, 2011, and applicable to applications for benefits received by VA on or after February 24, 2011, and to all applications pending before VA, the United States Court of Appeals for Veterans Claims (Veterans Court), or the United States Court of Appeals for the Federal Circuit (Federal Circuit) on February 24, 2011. Id. at 4245.

Your letter states that the effective date of 38 C.F.R. § 3.307(a)(6)(iv) is contrary to law, arbitrary, irrational, and unconstitutional and should be retroactive to November 1, 2004, for claims filed on or after that date. You state that VA does not apply 38 C.F.R. § 3.307(a)(6)(iv) to claims filed between November 1, 2004, and

Page 3.

Mr. Stephen B. Kinnaird


February 23, 2011, and that as a result, VA is applying two different substantive rules depending upon when the claim was filed. Your letter also states that, because VA "pays benefits for Korean DMZ herbicide exposure so long as a claim was filed after November 1, 2004," when VA amended the Veterans Benefits Administration Adjudication Procedures Manual (VBA Manual) Rewrite, M21-1MR, Part VI, Ch. 2, § B, regarding claims for benefits for spina bifida and other covered defects, 38 C.F.R. § 3.307(a)(6)(iv) should be retroactive to that date.

This argument is premised upon two misunderstandings. First, as stated in the final-rule notice, section 3.307(a)(6)(iv) is applicable to claims filed before February 24, 2011, that were pending before VA or a court, as well as to claims filed on or after that date. 76 Fed. Reg. 4245. As a result, the presumption of herbicide exposure in 38 C.F.R. § 3.307(a)(6)(iv) was applicable to Mr. McKinney's and Mr. Mallory's claims referenced in your letter, which were filed prior to February 24, 2011, and were pending before VA or the Veterans Court on that date. The rule is not applicable, however, to claims filed before February 24, 2011, that had been finally decided by VA and were not pending before the Veterans Court or the Federal Circuit on that date. Nevertheless, a Veteran whose claim was denied before February 24, 2011, but who may benefit from the 2011 revision of section 3.307(a)(6)(iv), may file a new claim based on the revised regulation. *See Routen v. West*, 142 F.3d 1434, 1441-42 (Fed. Cir. 1998).

Second, it has never been VA's policy that only claims filed after November 1, 2004, can result in a grant of benefits based on herbicide exposure in the Korean DMZ. Rather, VA regulations have long provided that a Veteran who was exposed to herbicides in service is entitled to compensation for disabilities associated with herbicide exposure, irrespective of when the claim is filed or where the exposure occurred. *See* 38 C.F.R. § 3.309(e) (1995) (providing that, "[i]f a veteran was exposed to an herbicide agent during . . . service," certain diseases manifested after service will be presumed to be service connected); 66 Fed. Reg. 23,166 (May 8, 2001) (explaining that benefits may be granted for disability resulting from herbicide exposure in locations other than Vietnam). If a claim is based on herbicide exposure occurring outside the times and locations as to which herbicide exposure is presumed, VA makes a factual determination as to whether the Veteran was exposed to herbicides during such service. *See Haas v. Peake*, 525 F.3d 1168, 1193 (Fed. Cir. 2008) ("servicemembers who are not entitled to the presumption of exposure are nonetheless entitled to show that they were actually exposed to herbicides"). In 2003, after VA received information from DoD regarding use of herbicides in or near the Korean DMZ and identifying certain units that served in that area at the time such herbicides were applied, VBA issued instructions to VBA adjudicators, through VBA Manual M21-1, advising that herbicide exposure would be "conceded" as to Veterans who served in those units during the specified time period. The 2011 regulatory amendment formally established a presumption of exposure for Veterans who served in those units and broadened the covered time period to include a specified period after herbicide application ceased. Those provisions constituted liberalized evidentiary standards that VA applied prospectively in deciding all pending and future claims, irrespective of when they were filed. We therefore

Page 4.

Mr. Stephen B. Kinnaird

do not agree with your assertion that VA's regulations and policies draw arbitrary distinctions based upon when a claim was filed.

We note that, under 38 U.S.C. § 5110(g), if an award is based upon the liberalizing criteria of a new rule, such as the 2011 amendment to 38 C.F.R. § 3.307(a)(6), VA may not pay benefits for any period prior to the effective date of the new rule. Section 5110(g) states in pertinent part:

> where compensation, dependency and indemnity compensation, or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.

Thus, although the 2011 amendment applies to all claims pending on February 24, 2011, irrespective of when they were filed, section 5110(g) precludes VA from awarding benefits based on that regulation for periods before February 24, 2011. VA does not have discretion to ignore that statutory requirement.

To the extent you seek to argue that VA should have made its 2011 liberalizing regulation retroactively effective to 2004 in order to avoid the limitation in section 5110(g), we respectfully disagree. It is well-settled that agencies generally lack authority to issue retroactive regulations to implement a new policy absent an express statutory grant of such authority. The Supreme Court has recognized that agencies must be free to make and change policies within the boundaries established by Congress. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 863-64 (1984). However, the Court has held that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."[1] *Bowen v.*

---

[1] The Administrative Procedure Act, 5 U.S.C. § 551(4), defines a "rule" to mean "the whole or a part of an agency statement of general or particular applicability and *future effect* designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency. (Emphasis added). Some circuit courts of appeals have interpreted the requirement of "future effect" in section 551(4) to impose a bar to retroactive rulemaking *See, e.g., Celtronix Telemetry, Inc. v. Fed. Commc'ns Comm'n,* 272 F.3d 585, 588 (D.C. Cir. 2001); *Nat'l Med. Enters., Inc. v. Sullivan,* 957 F.2d 664, 671 (9th Cir. 1992); *see also Bowen,* 488 U.S. at 216, 224 (Scalia, J., concurring) (arguing that plain meaning of APA definition of "rule" precludes agency from adopting rules that have a primary retroactive effect in the sense

Page 5.

Mr. Stephen B. Kinnaird

*Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Further, "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless the power is conveyed by Congress in express terms." *Id.* "The standard for finding such unambiguous direction is a demanding one.'" *Bernklau v. Principi*, 291 F.3d 795, 805 (Fed. Cir. 2002) (quoting *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 316-317 (2001)). For example, in *Liesegang v. Secretary of Veterans Affairs*, 312 F.3d 1368, 1377 n.1 (Fed. Cir. 2002), the Federal Circuit stated that "settled and binding precedent" precluded it from giving retroactive effect to a VA regulation creating a presumption of service connection for type-2 diabetes for Vietnam Veterans exposed to herbicides. The court stated that 38 U.S.C. § 1116, which authorized the regulation at issue, did not contain "express and unambiguous permission" for VA to promulgate a retroactive regulation. *Id.*

VA promulgated 38 U.S.C. § 3.307(a)(6)(iv) pursuant to 38 U.S.C. § 501(a), which provides the Secretary of Veterans Affairs with the authority to prescribe all "necessary" and "appropriate" rules to carry out the laws administered by the VA, including "regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws." 74 Fed. Reg. 36,642. That statute contains no express and unambiguous permission to issue retroactive regulations. The VA General Counsel has held that *Bowen* does not wholly preclude the Secretary from making a new rule effective earlier than the date of its final publication in the Federal Register if the rule would benefit rather than burden affected persons. VAOPGCPREC 7-2003, ¶ 24; *see Hernandez-Rodriguez v. Pasquarell*, 118 F.3d 1034, 1042 (5th Cir. 1997) ("traditional justification for judicial reluctance to apply regulations retroactively--interference with settled expectations and antecedent rights—[is] diminished when the change is beneficial to the claimant"). However, "VA's authority to issue retroactive regulations is necessarily subject to the limitation in 38 U.S.C. § 501(a) that any such rules must be consistent with the statutes governing entitlement to veterans benefits." VAOPGCPREC 7-2003, ¶ 25.

Assigning a liberalizing regulation a retroactive effect date for the purpose of avoiding the limitation in section 5110(g) would largely undermine the clear purpose of section 5110(g). That statute plainly applies where a statute or regulation establishes a new basis for awarding benefits and reflects a legislative intent generally to preclude retroactive awards based on such new authorities. Although there may be exceptional circumstances in which it may be appropriate to assign a retroactive effective date to a particular regulation, it would be inappropriate and inconsistent with section 5110(g) to do so as a routine matter. Accordingly, it has been VA's longstanding practice to make its new regulations effective thirty days after notice of the final rule is published in the Federal Register.

---

of changing what the law was in the past without "some special congressional authorization").

Page 6.

Mr. Stephen B. Kinnaird

We do not believe that the circumstances of the 2011 amendment are so exceptional as to warrant a retroactive effective date. As noted above, after VA in 2003 received information from DoD regarding use of herbicides in or near the Korean DMZ, VA issued instructions in the VBA Manual M21-1 advising adjudicators that herbicide exposure would be conceded to persons who served in units identified by DoD between April 1968 and July 1969, when herbicides were applied in that area. VBA Manual M21-1, Part VI, ch. 7, para. 7.20. In 2005, following enactment of Pub. L. No. 108-183, the VBA Manual M21-1MR, Part IV, Subpart ii, ch. 2, § C, para. 10.j., contained the same guidance. In 2009, VA proposed to establish a regulatory presumption of herbicide exposure for the same group of Veterans identified in those manual provisions. 74 Fed. Reg. 36,640 (July 24, 2009). After considering public comments on the proposal, VA revised the scope of the presumption to encompass Veterans identified by DoD as having served in units in or near the Korean DMZ between the extended period from April 1968 to August 1971. 76 Fed. Reg. 4,245 (Jan. 25, 2011). VA explained that the regulatory presumption was not based on any statutory requirements, but was instead based on VA's assessment of "known facts and congressional intent" and VA's exercise of its general rulemaking authority. 74 Fed. Reg. at 36,642. These incremental changes in VA policies do not present exceptional circumstances. Rather, they reflect the ordinary process by which agencies modify and improve its programs over time based on experience, information, and public input. Section 5110(g) provides that such regulatory changes will have prospective effect, but will not provide a basis for retroactive awards.

Further, assigning a retroactive effective date to this regulation would potentially create administrative concerns affecting VA's ability to adjudicate claims in a fair, consistent, and efficient manner. First, it would be unfair for VA to assign a retroactive effective date to the 2011 regulation in order to avoid the limitation of 38 U.S.C. § 5110(g), while not similarly assigning a retroactive effective date to other regulations VA issues that establish entitlement to benefits for other groups of Veterans. Second, although you request that the 2011 amendment be made retroactive to November 1, 2004, that date relates to the date of a provision in the VBA Manual pertaining to benefits for Veterans' children with spina bifida, rather than to Veterans' entitlement to disability compensation. As your request illustrates, the task of identifying an appropriate retroactive effective date for a regulation often may involve a difficult and potentially arbitrary determination, which could further compound the inequity resulting from non-uniform retroactive effective dates for various regulations. Third, because the assignment of a retroactive effective date would be contrary to VA's usual practice, it would create potential confusion among both claimants and adjudicators, increasing the complexity of adjudications and the potential for errors and inconsistent results. For example, because a retroactive regulation would not be found in editions of the Code of Federal Regulations for past years in which it was made retroactively effective, claimants and adjudicators seeking to identify regulations applicable to past periods may overlook such retroactive regulations.

Page 7.

Mr. Stephen B. Kinnaird

Additionally, making regulations effective for significant past periods may create confusion regarding the effect of such regulations on claims previously and finally denied during such past periods. *See McHenry v. United States*, 367 F.3d 1370, 1381 (Fed. Cir. 2004) (agency's decision about effective date of a new policy necessarily requires consideration of need for finality in administrative decisionmaking). The Supreme Court has "long favored" the application of the principles of collateral estoppel and res judicata to final administrative decisions. *Astoria Fed. Savs. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). "The purpose of the rule of finality is to preclude repetitive and belated readjudication of veterans' benefit claims." *Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc). In general, VA decisions on benefit claims are final. *See* 38 U.S.C. §§ 511(a), 7103(a), 7104(a) and (b), 7105(c); *Routen*, 142 F.3d at 1438 ("[u]nless otherwise provided by law, the cases are closed and the matter is thus ended"). Under a limited statutory exception to this finality, in 38 U.S.C. §§ 5109A and 7111, a decision by the Secretary or Board of Veterans' Appeals "is subject to retroactive revision on the grounds of clear and unmistakable error" (CUE) if, for example, the decision failed to apply an applicable regulation in effect at the time of the decision. Assigning retroactive effective dates to regulations would likely create confusion among adjudicators in applying those CUE principles and determining which regulations were actually in effect at the time of the prior decision. The foregoing administrative concerns support VA's general practice of making regulations effective prospectively rather than retroactively, and, as noted above, we find no basis to depart from that general practice in this instance.

In support of a retroactive effective date, you cite a footnote in the settlement agreement in *Brian Mallory v. Shinseki*, No. 2011-401 (Vet. App.). Mr. Mallory filed a claim in 2006 to reopen a previously denied claim for service connection for diabetes and filed two additional claims in 2007. He alleged that all three conditions were due to herbicide exposure in Korea from August 9, 1969, to September 5, 1970. VA denied the claims, and he appealed to the Veterans Court in 2011. The parties entered into a settlement in which VA awarded service connection for diabetes, effective December 12, 2006, and for the two other conditions, effective October 12, 2007. The footnote in the agreement states that, notwithstanding the non-binding nature of the agreement, VA anticipated that, if there were "similarly situated appeals to the [Veterans Court], those Appellants would receive similar treatment." You interpret this footnote to mean that "Veterans falling under the same exposure window as Mallory should be granted similar relief from the 2004 manual rule." However, the meaning of the phrase "similar treatment" in the footnote is ambiguous. It is unclear whether the phrase "similar treatment" refers to application of 38 C.F.R. § 3.307(a)(6)(iv) to claims pending before the Veterans Court on February 24, 2011, or to the nature of the relief provided Mr. Mallory in the settlement agreement. In addition, the text of the agreement states that "[b]oth parties agree that this settlement is based on the unique facts of this case and in no way should be interpreted as binding precedent for the disposition of future cases." This settlement agreement therefore does not support the request for an earlier effective date for 38 C.F.R. § 3.307(a)(6)(iv). We do agree, however, that the regulation

Page 8.

Mr. Stephen B. Kinnaird

applies to claims filed by Veterans who were exposed to herbicides during the same period as Mr. Mallory that were pending before VA, the Veterans Court, or the Federal Circuit on February 24, 2011, and to claims filed on or after that date.

For these reasons, we deny your petition for rulemaking. As explained above, however, we emphasize that the 2011 amendment to 38 C.F.R. § 3.307(a)(6) applies to all claims pending on February 24, 2011, irrespective of when they were filed. Further, a Veteran whose claim was finally denied prior to that date may file a new claim based on the 2011 amendment. Finally, we note that, if there is evidence that a Veteran was actually exposed to herbicides in service, such as evidence that the Veteran applied or handled herbicides, benefits may be granted without regard to the presumption of exposure in the 2011 regulation.

I hope this information is helpful to you.

Sincerely,

Tammy L. Kennedy
Acting General Counsel

Exhibit B

*Designated for electronic publication only*

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-401(E)

BRIAN E. MALLORY, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before MOORMAN, *Judge*.

## MEMORANDUM DECISION

*Note:  Pursuant to U.S. Vet. App. R. 30(a),
this action may not be cited as precedent.*

MOORMAN, *Judge*:  Before the Court is the appellant's application for an award of $ 60,277.93 for attorney fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).  The Secretary filed a response in opposition to that application, and the appellant filed a reply.  The EAJA application satisfies the EAJA pleading requirements.  28 U.S.C. § 2412(d)(1)(b).  The appellant asserts that he is a prevailing party, that he is eligible for an award based on his net worth, and that the Secretary's position was not substantially justified and his application includes a list of fees and expenses sought.  *See Scarborough v. Principi*, 541 U.S. 401 (2004).  The Secretary opposes the appellant's application on several grounds.  First, the Secretary argues that the appellant is not a prevailing party.  In the alternative, the Secretary maintains the appellant is not entitled to EAJA fees because the Secretary's position was substantially justified.  Finally, should the Court determine that the appellant is entitled to EAJA fees, the Secretary argues that the amount of fees sought should be reduced.  For the reasons that follow, the Court will deny the application.

# I. BACKGROUND

This application stems from a November 9, 2010, decision of the Board of Veterans' Appeals (Board) that denied the appellant's claim for entitlement to service-connected benefits for diabetes mellitus, atherosclerotic cerebrovascular disease, and a cardiac disorder, all claimed as secondary to herbicide exposure. Record (R.) at 3-15. The Board found that Mr. Mallory was not entitled to a presumption of herbicide exposure because, at the time of the Board's decision, the policy guidelines set forth in VA's *Adjudication and Procedures Manual* (MR21-1MR) part VI, chapter 2, section B, provided for a presumption of herbicide exposure in Korea only from April 1968 to July 1969, and Mr. Mallory's service in Korea took place between August 9, 1969, and September 5, 1970. R. at 10. In adjudicating this claim, the Board applied the presumptions in effect at the time as outlined in 38 C.F.R. §§ 3.307, 3.309(e) (2009), and the MR21-1MR. R. at 9. The Board determined that the appellant "did not arrive in Korea until after the use of herbicides had been discontinued" and therefore concluded that the herbicide presumption was not applicable. R. at 10. The Board also found that Mr. Mallory had not submitted sufficient evidence to establish exposure to herbicides on a direct basis. R. at 14.

On January 25, 2011, 38 C.F.R. § 3.307(a)(6)(iv) was amended to provide a presumption of herbicide exposure for veterans who served in or near the Korean Demilitarized Zone (DMZ) between April 1, 1968, and August 31, 1971. R. at 10; *see* 76 Fed. Reg. 4245-01 (2011). The revised regulation became effective on February 24, 2011. 76 Fed. Reg. at 4245.

Notwithstanding the amendments to § 3.307, in September 2011, the appellant filed a brief arguing that the MR21-1MR provision relied upon by the Board in denying appellant's claims should be set aside as arbitrary, capricious, and contrary to law and the Board's reliance upon that provision deprived him of due process. Appellant's Brief at 1-26. Accordingly, the appellant argued that the Board's decision should be vacated and the matter remanded to the Board with instructions to determine whether he was entitled to service connection given a presumption of herbicide exposure that extends to those who served near the Korean DMZ during the 25-month period from August 1, 1969 to August 31, 1971. Appellant's Brief at 25-26. On January 25, 2012, the Secretary filed his brief conceding that the Board decision should be reversed based upon the amendments to § 3.307 and the matter remanded with instructions to grant the appellant entitlement to service connection

for diabetes mellitus, atherosclerotic cerebrovascular disease, and a cardiac disorder all as due to exposure to herbicides.  Secretary's Brief at 1-14.  The Secretary maintained that the Court need not address the appellant's arguments premised upon his challenge of the earlier version of the MR21-1MR, which was no longer in effect, and his attendant constitutional argument that the 2004 M21-1MR provision deprived him of due process.  Secretary's Brief at 9-10.  The appellant filed a reply brief in which he disagreed with the Secretary's assertion that the Court need not address the validity of the rule because it is an interpretative rule, rather than a binding substantive rule (Appellant's Reply Brief at 6-12), and because the 2011 regulation "trumps" the VA Manual rule (Appellant's Reply Brief at 12-14).

Although both parties agreed that the Board's decision should be vacated and service connection should be awarded based upon a presumption of herbicide exposure, at the core of the parties' dispute was the effective date that would eventually be assigned.  The appellant argued that because the 2011 regulation did not have a retroactive effective date, the earliest effective date of a service connection award pursuant to the regulation would be February 24, 2011.  Appellant's Motion for an Order to Protect Similarly Situated Claimants at 5-6.  The Secretary maintained that it was premature for the Court to address the effective date of an award before service connection has been granted and the regional office assigns an effective date.  Secretary's Response to Appellant's Motion to Protect Similarly Situated Claimants at 6-7.

On September 28, 2012, the Court issued a memorandum decision reversing the Board's decision and remanding the matter.  *Mallory v. Shinseki*, No. 11-0401, 2012 WL 4466676 (U.S. Vet. App. 2012), withdrawn by *Mallory v. Shinseki*, No. 11-0401, 2013 WL 3578118 (U.S. Vet. App. July 12, 2013).  The Court declined to address whether the 2011 regulation would be applied retroactively and noted that the Board should decide that issue in the first instance on remand.  On May 9, 2013, the matter was submitted to a panel and on June 5, 2013, oral argument was scheduled.  On July 10, 2013, the parties filed a "Joint Motion to Terminate the Appeal" pursuant to the terms of a stipulated agreement (Agreement).  According to the Agreement, the Secretary agreed to award the appellant service connection for diabetes mellitus, atherosclerotic cerebrovascular disease, and a cardiac disorder, effective October 12, 2007.  The Agreement expressly states that the Secretary "does not admit any error was committed by the Department of Veterans Affairs or any of its

3

employees in the adjudication of the claim that is the subject of this appeal." On July 12, 2013, the Court granted the parties' joint motion, revoked its June 5, 2013, order setting the case for oral argument, withdrew the Court's September 28, 2012, memorandum decision, and terminated the appeal.

The appellant filed his application for an award of attorneys fees pursuant to EAJA on August 9, 2013. On October 24, 2013, the Secretary filed a response to the EAJA application. The Secretary defends against the application asserting that the appellant was not a prevailing party in the underlying appeal, that the position of the Secretary was substantially justified at the administrative and litigation stages, and that the fees and expenses sought are unreasonable. The appellant filed a reply.

## II. ANALYSIS

### A. Prevailing Party

EAJA fees may be awarded only to prevailing parties. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Scarborough*, 541 U.S. at 407-08; *Owens v. Brown*, 10 Vet.App. 65, 66 (1997). A party seeking EAJA fees has the burden of demonstrating prevailing-party status. *Weierbach v. West*, 12 Vet.App. 486, 487 (1999). An appellant is considered a prevailing party upon either "(1) the ultimate receipt of a benefit that was sought in bringing the litigation, i.e., the award of a benefit, or (2) a court remand predicated upon administrative error." *Zuberi v. Nicholson*, 19 Vet.App. 541, 544 (2006). "[A] remand does not constitute 'some relief on the merits' unless that remand is predicated upon administrative error." *Sumner v. Principi*, 15 Vet.App. 256, 264 (2001) (en banc), *aff'd sub. nom. Vaughn v. Principi*, 336 F.3d 1351 (Fed. Cir. 2003).

The Secretary argues that the Court terminated the appeal based upon the intervening change in law and not an administrative error. Therefore, the Secretary maintains that the appellant is not a prevailing party. The Court disagrees. As noted above, an appellant is considered a prevailing party upon *either* the receipt the benefit sought in bringing the litigation *or* a court remand predicated upon administrative error. *Zuberi*, 19 Vet.App. at 544. The Secretary argues that termination of the appeal is not based upon an administrative error; however, the Secretary ignores the first theory upon which an appellant can become a prevailing party; i.e., the ultimate receipt of the benefits sought on

4

appeal.  In this matter, because the Agreement provided the appellant with all the benefits he sought on appeal, he is a prevailing party for the purposes of EAJA.  *Evington v. Principi*, 18 Vet.App. 331, 334 (2004).

## B.  Substantial Justification

Once an EAJA applicant alleges that the Secretary's position was not substantially justified, the burden shifts to the Secretary to demonstrate that his position was substantially justified at the administrative and litigation stages.  *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) ("[A] position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."); *Locher v. Brown*, 9 Vet.App. 535, 537 (1996); *Stillwell v. Brown*, 6 Vet.App. 291, 301 (1994).  Substantial justification is based on the totality of circumstances, which includes consideration of, *inter alia*, "merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court."  *White v. Nicholson*, 412 F.3d 1314, 1317 (Fed. Cir. 2005) ("The totality of circumstances, by its very description, does not exclude any valid issue from consideration.").

The Secretary maintains that his position at the administrative level was substantially justified because the Agreement and Joint Motion to Terminate were based upon a change in law, and the Board's decision was properly based upon the current law at the time.  The appellant argues that the Agreement was not based upon the intervening change in law and that the Board was not substantially justified in it reliance upon the 2004 M21-1MR provision.  Specifically, the appellant argues that there was no judicial caselaw on the issues presented on appeal and, therefore, it cannot be said that the Board's decision was based upon existing law.  The Court disagrees.

Notwithstanding the appellant's arguments on appeal with regard to the validity of the 2004 M21-1MR provision, the Board applied the law applicable at the time of its decision.  *See Patton v. West*, 12 Vet.App. 272, 282 (1999) (stating that the Board "cannot ignore provisions of the Manual M21-1 . . . that are favorable to a veteran"); *Hamilton v. Derwinski*, 2 Vet.App. 671, 675 (1992) (holding that "[s]ubstantive rules, those which have the force of law and narrowly limit administrative action, in the VA Adjudication Procedure Manual are the equivalent of Department

5

regulations"); *Fugere v. Derwinski*, 1 Vet.App. 103, 108 (1990) ("'Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'" (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974))).  The appellant did not argue that the Board misread or misapplied the 2004 M21-1MR provision; in fact, he conceded that as the provision was written, he did not qualify for the presumption.  Appellant's Brief at 10 ("Although [the appellant's] unit is not 'a unit listed in block M21-1MR, Part IV, 2B.6.b.', [units for which herbicide exposure was conceded], the appellant argued that his unit should be considered to be listed in that block."), 11-12 ("[T]he Board correctly found that [the appellant] did not arrive in Korea during the window period set forth in the VA Manual.").  He argued instead that the M21-1MR provision *should have* included his unit and *should have* extended the presumption beyond the dates provided and therefore the 2004 M21-MR1 provision was invalid.  However, at the time of the Board's decision, there was no other authority for affording the appellant a *presumption* of herbicide exposure.  *See* 38 C.F.R. § 3.307 (2009); *see also* Appellant's Reply Brief at 9 ("[T]here was no regulation or statute in existence at the time [the 2004 M21-1MR provision] was published that it was interpreting.").  On appeal, the appellant asked the Court to "set aside the part of the 2004 VA MANUAL that denies the presumption of herbicide exposure to those who served in the Korean DMZ during the 25-month period from August 1, 1969, to August 31, 1971" and to "vacate the Board's decision . . . and remand [the appellant's] claims to the Board to determine whether [he] is entitled to service connection given a presumption of herbicide exposure that extends to those who served near the Korean DMZ during the 25-month period from August 1, 1969, to August 31, 1971."  Appellant's Brief at 25-26.  The appellant, however, offered no authority upon which such a presumption could be afforded.  Even if the M21-1MR provision had been determined to be invalid, the Board would have been left with no authority to award service connection on a presumptive basis.  The Board would then only be authorized to determine, as it did, whether the appellant had demonstrated service connection on a direct basis by independently substantiating his claimed exposure.  The Board considered whether the evidence directly established herbicide exposure and found that "the clear preponderance of the evidence . . . shows that the [v]eteran was not exposed to herbicides while on active duty."  R. at 14. Moreover, the Secretary is not required to demonstrate, at this stage in the litigation, the validity of the 2004 M21-1MR provision which is no longer in effect.  *See  Hensley v. Eckerhart*, 461 U.S. 424, 437

(1983) ("A request for attorney's fees should not result in a second major litigation."); *see also Clemmons v. West*, 12 Vet.App. 245 (1999) (the Board's position was substantially justified where the Board clearly relied upon then-current law). Accordingly, the Court finds the Board's reliance upon the 2004 M21-1MR provision was reasonable and, therefore, the Secretary's position at the administrative stage was substantially justified.

The Secretary also maintains that his position during the litigation stage of this appeal was substantially justified. The Secretary asserts that he "engaged in early, prompt, and repeated efforts to reach an alternative resolution of this case following the amendment to § 3.307, which rendered the issues on appeal moot." Secretary's Response in Opposition to Appellant's Application for Attorney Fees and Expenses (EAJA Response) at 13 (citing Appellant's Application for an Award of Attorneys' Fees and Expenses Pursuant to 28 U.S.C. § 2412(d) (EAJA Application), Exhibit B at 5-6, 22 (requesting fees related to Secretary's settlement offers in August and December 2011)). The Court agrees. The submissions of the parties demonstrate, and the appellant does not dispute, that the Secretary's position throughout this litigation was that the appellant was entitled to the presumption of exposure to herbicides pursuant to the amended § 3.307 and that the Secretary actively pursued resolution of this matter based upon that change in law. *See* Secretary's Brief at 1-14; EAJA Application, Exhibit B at 5-6, 22; Appellant's Reply to the Secretary's Opposition to the Appellant's Application for an Award of Reasonable Attorneys' Fees and Expenses (Reply) at 11.

As discussed above, the disagreement between the parties ultimately rested on the effective date that would eventually be assigned to the appellant's award of benefits. The appellant's position throughout the litigation has been that the amended § 3.307 could not be applied retroactively and therefore could not "trump" the 2004 M21-1MR provision. *See* Appellant's Reply Brief at 12-14. The Secretary maintained, and the Court agreed in its now-withdrawn memorandum decision, that the issue of the effective date of the appellant's award of service connection and consideration of the retroactivity of § 3.307 should be adjudicated by the Board in the first instance. In that regard, the Court stated:

> The Court need not now decide whether the 2011 revised regulation is a "liberalizing" law. On remand, the Board will assign an appropriate effective date for the award of service connection and, as part of that determination, the Board will address in the first instance whether the 2011 revised regulation is a "liberalizing"

7

law. In this regard, the Board is directed to consider this Court's decision in *Kent v. Nicholson*, which held that "the change in law brought about by the Federal Circuit's opinion in *Wagner* [*v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004), which effect was to increase VA's burden to rebut the presumption of soundness for wartime veterans,] is procedural, not substantive, in nature." 20 Vet.App. 1, 7 (2006). The Court there reasoned that, although there was a change in interpretation of law, it was not a liberalizing change in law but was merely procedural and did not therefore create "new rights" to VA benefits. *Id*. (citing *Spencer v. Brown*, 4 Vet.App. 283, 289 (1993)). The Court further discussed the Federal Circuit's decision in *Routen v. West*, 142 F.3d 1434, 1439-42 (Fed. Cir. 1998), and noted that the Federal Circuit "stated that the change in the evidentiary standard did not create a new cause of action since no new basis of entitlement to the underlying VA benefit was created." *Kent*, 20 Vet.App. at 7.

In this regard, the Court further notes that the Secretary stated in the Supplementary Information accompanying the 2011 Final Rule that this amendment "incorporates relevant provisions from the Veterans Benefits Act of 2003, Public Law 108-183" and specifically "Section 102 of the Act," codified at 38 U.S.C. § 1821. 76 Fed. Reg. at 4245. The Secretary in the Final Rule explained that VA "was changing the presumption ending date of July 31, 1969, to August 31, 1971," the date identified by Congress, in order "to adequately reflect the statutory provisions." 76 Fed. Reg. at 4245-46. The Secretary further stated in the Final Rule: "We believe it is reasonable and consistent with the intent of Congress to concede exposure for veterans who served in or near the Korean DMZ after herbicide application ceased, because of the potential for exposure to residuals of herbicides applied in that area." *Id*. at 4245.

*Mallory*, 2012 WL 4466676, at *4. Given the totality of circumstances, including the Secretary's early attempts to resolve this matter and this Judge's agreement with the Secretary's position, the Court finds that the Secretary's position throughout the litigation of this matter had a reasonable basis in law and fact and was therefore substantially justified. *See Pierce*, 487 U.S. at 565; *White*, 412 F.3d at 1317.

The appellant argues that the Secretary "abandoned" his original position advanced in the August 2011 settlement offer. Reply at 11. As the Secretary points out, the Secretary did not concede any error in the Agreement that led to the parties' Joint Motion to Terminate. The fact that the parties came to an agreement as to the effective date and entered into a settlement does not render his legally sound position throughout this appeal unreasonable. *See Smith (Shannon) v. Principi*, 16 Vet.App. 71, 74 (2002) ("EAJA '"was never intended to chill the government's right to litigate

. . . reasonably substantiated positions. . . .""" (quoting *Carpenter v. West*, 12 Vet.App. 316, 321 (1999) (quoting *Stillwell v. Brown*, 6 Vet.App. 291, 303(1994)))).  Even if the Secretary had changed his position with respect to the proper process for assigning an effective date in this matter, although it is not clear that he did, such a change would not render his litigation position unreasonable.  *See Carpenter*, 12 Vet.App. at 321.

### III.  CONCLUSION

Upon consideration of the foregoing and the pleadings of the parties, the appellant's EAJA application is DENIED.

DATED:  August 27, 2014

Copies to:

Patrick Berkshire, Esq.

VA General Counsel (027)